Gus ORTIZ, Jr., Appellant,

v.

The STATE of Texas, State.

No. 2–98–468–CR.

Court of Appeals of Texas,
Fort Worth.

June 10, 1999.

Wes Dauphinot, Fort Worth, for Appellant.

Tim Curry, Criminal District Attorney, Charles M. Mallin, Assistant Criminal District Attorney, David M. Curl, Assistant Criminal District Attorney, Camille Higgins, Assistant Criminal District Attorney, Mollee Westfall, Assistant Criminal District Attorney, Fort Worth, for Appellee.

Panel B: LIVINGSTON, BRIGHAM, and HOLMAN, JJ.

## OPINION

DIXON W. HOLMAN, Justice.

Appellant Gus Ortiz, Jr. appeals his conviction by a jury for the offense of aggravated robbery with a deadly weapon. The indictment included an enhancement notice based on a prior felony conviction for possession of cocaine and a habitual offender notice based on a prior felony theft conviction. The jury found Appellant guilty, the

enhancement paragraphs true, and sentenced him to 65 years in prison. Because we find no reversible error, we will affirm.

### ISSUES

Appellant attacks the legal and factual sufficiency of the evidence, the State's challenges and the trial court's dismissal of three veniremembers for cause, and the trial court's failure to *sua sponte* instruct the jury at the punishment phase on the State's burden of proof of the extraneous offenses alleged against Appellant as enhancements.

### THE OFFENSE

The jury heard evidence that on March 10, 1997, Appellant went into a Mervyn's Department Store in Tarrant County, took some men's shirts, and left the store without paying for them. Mervyn's security officer John Coffey saw what Appellant did because the officer was watching him on the store's closed-circuit video surveillance system. Mr. Coffey and another store employee, Daniel Sanchez, immediately ran to the store's parking lot, where they confronted Appellant. Appellant would not surrender the shirts, and Mr. Coffey tried to handcuff him. A struggle began and Appellant pulled a knife that had a blade approximately three inches long. He stabbed it into Mr. Coffey's right arm and Mr. Sanchez' left elbow. The elbow wound required two stitches and the arm wound eight or nine stitches.

### DEADLY WEAPON

■ Appellant was arrested and charged with aggravated robbery with a deadly weapon. The indictment alleged that in the course of committing theft of property, Appellant threatened John Coffey or placed him in fear of imminent bodily injury or death, using a knife as a deadly weapon, and that in the manner of its use and intended use the knife was capable of causing death and serious bodily injury to Mr. Coffey. *See* TEX. PEN.CODE ANN. §§ 1.07(a)(17)(B), 29.02, 29.03(a)(2)

(Vernon 1994). Appellant's first issue on appeal contests the legal sufficiency of the evidence to support the conviction by contending that there is no evidence that Appellant used the knife as a deadly weapon. His second issue contests the factual sufficiency of the evidence.

■ A knife is not a deadly weapon per se. *See Moreno v. State,* 755 S.W.2d 866, 868–69 (Tex.Crim.App.1988). Appellant insists that Mr. Coffey's elbow wound was not a serious bodily injury, and cites *Danzig v. State,* 546 S.W.2d 299, 301–02 (Tex. Crim.App.1977), *overruled on other grounds, Denham v. State* 574 S.W.2d 129, 131 (Tex.Crim.App.1978) (wound inflicted on injured party is a factor to be considered in determining whether a knife is a deadly weapon; but jury may not infer deadliness solely from superficial wounds unless jury hears expert testimony that the knife was used or intended to be used in such a way that it was capable of causing death or serious bodily injury). Of course, an attacker's assertive conduct with a weapon during an attack may be evidence of his intent to use the weapon to inflict serious bodily injury or death. *See Johnson v. State,* 919 S.W.2d 473, 477 (Tex.App.—Fort Worth 1996, pet. ref'd); *Lockett v. State,* 874 S.W.2d 810, 815–16 (Tex.App.—Dallas 1994, pet ref'd).

Mr. Coffey testified that during the attack, he feared bodily injury or death, and that while Appellant stabbed him and waved the knife "back and forth," he yelled several times that "I will kill you, m——f——." Mr. Sanchez testified that during the entire encounter, Appellant screamed that "he was going to kill us M.F.'s." Another Mervyn's employee, Joyce Lewis, was on the parking lot and saw the struggle:

As soon as I saw them started [sic] going to the ground, that's when [Appellant] reached his hand around back. And that's when I could see his back, his right hand. He reached and pulled something out of his pocket, which I

thought was a knife. And he pulled it around, he swung it this way and stabbed one of them, which was John [Coffey]. As soon as I saw that, I ran back inside and told the girl working the jewelry counter to call 911.

She pointed to Appellant in the courtroom and identified him as the person she had seen purposely stab Mr. Coffey.

Beside working as a security officer at Mervyn's, Mr. Coffey was a police officer for the City of Westworth, trained at the police academy. During the struggle, Mr. Coffey felt the pain when he was stabbed, then saw the knife, believed Appellant was trying to stab him again, and was "in fear of bodily injury or death." Mr. Coffey testified that, based on his police training, the knife Appellant used was capable of causing death or serious bodily injury. During the struggle, he tried to deflect and prevent Appellant's efforts to use the knife to stab him again. By the witnesses' various accounts, Appellant was waving the knife back and forth, yelling that he was going to kill Mr. Coffey, and no evidence suggests that Appellant used the knife with deliberate precision to avoid stabbing Mr. Coffey's vital organs and to avoid causing him serious bodily injury or death. See Johnson, 919 S.W.2d at 480.

In considering the legal sufficiency of the evidence, we have carefully viewed the evidence in the light most favorable to the verdict. See Narvaiz v. State, 840 S.W.2d 415, 423 (Tex.Crim.App.1992), cert. denied, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). Our critical inquiry under that standard is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, see Emery v. State, 881 S.W.2d 702, 705 (Tex.Crim.App.1994), cert. denied, 513 U.S. 1192, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995), which concedes the trier of fact's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781,

2789, 61 L.Ed.2d 560 (1979). The sufficiency of evidence is a question of law, and we may not overturn the verdict unless it is irrational or unsupported by proof beyond a reasonable doubt. See Matson v. State, 819 S.W.2d 839, 846 (Tex.Crim.App. 1991).

▮▮▮ Turning to the factual sufficiency of the evidence, we have viewed all of the evidence "without the prism of 'in the light most favorable to the prosecution.'" See Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim.App.1996) (citing Stone v. State, 823 S.W.2d 375, 381 (Tex.App.—Austin 1992, pet. ref'd, untimely filed)). Under that standard, we may only set aside the verdict if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. See id. In performing that review, we are to give "appropriate deference" to the fact finder. Id. at 136. We may not reverse the fact finder's decision simply because we may disagree with the result. See Cain v. State, 958 S.W.2d 404, 407 (Tex.Crim.App.1997). Instead, we may find the evidence factually insufficient only where necessary to prevent manifest injustice. See id. Moreover, factual sufficiency is measured based on a hypothetically correct jury charge, not the charge actually given. See Malik v. State, 953 S.W.2d 234, 239 (Tex.Crim.App.1997). In other words, the sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. See id. at 240. Such a charge would be one that accurately sets out the law, as authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. See id.

The court's charge actually given in this case on guilt/innocence and a hypothetically correct charge are the same. In addition to charging the jury on the statutory elements of the offense of robbery, the court's charge instructed the jury to find Appellant not guilty unless the jury found

beyond a reasonable doubt that while committing the robbery Appellant used or exhibited a knife as a deadly weapon that, in the manner of its use or intended use, was capable of causing death or serious bodily injury. The charge instructed the jury that "a person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result."

Appellant does not challenge the evidence of the elements of the robbery offense or the evidence that he stabbed Mr. Coffey with a knife. Instead, he contends that there is no evidence that he used or intended to use the knife as a deadly weapon. Nevertheless, there is, however, sufficient evidence for a rational jury to have found that Appellant's assertive conduct with the knife, stabbing Mr. Coffey while voicing an intent to kill him, proved beyond a reasonable doubt that Appellant's intended use of the knife was to cause death or serious bodily injury to Mr. Coffey. To qualify as a deadly weapon, a knife must be *capable* of causing serious bodily injury or death. *See* TEX. PEN.CODE ANN. § 1.07(a)(17)(B) (Vernon 1994). The testimony of Mr. Coffey, a trained policeman, was sufficient to prove beyond a reasonable doubt that the knife, as allegedly used against him by Appellant was *capable* of causing death or serious bodily injury. *See Johnson,* 919 S.W.2d at 478.

Because the jury's verdict is not irrational nor is it unsupported by proof beyond a reasonable doubt, we overrule Appellant's challenge to the legal sufficiency of the evidence. Because the jury's verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust, we overrule Appellant's challenge to the factual sufficiency of the evidence.

## THE VENIRE

■■ The State may challenge for cause any potential juror who appears biased or prejudiced against any phase of the law upon which the State is entitled to rely for conviction or punishment. *See* TEX.CODE CRIM. PROC. ANN. art. 35.16(b)(3) (Vernon 1994). When there is a challenge for cause on that ground, the trial court should ascertain whether the prospective juror is willing to follow the applicable law, including fully and fairly considering the full range of punishment the law prescribes. *See Fuller v. State,* 829 S.W.2d 191, 200 (Tex.Crim.App.1992), *cert. denied,* 508 U.S. 941, 113 S.Ct. 2418, 124 L.Ed.2d 640 (1993); *Smith v. State,* 513 S.W.2d 823, 826 (Tex.Crim.App.1974). A prospective juror whose beliefs would prevent or substantially impair his or her ability to consider or apply relevant law in accordance with the trial court's instructions is *biased* within the meaning of article 35.16(b)(3). *See Cooks v. State,* 844 S.W.2d 697, 709 (Tex.Crim.App.1992), *cert. denied,* 509 U.S. 927, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993); *Post v. State,* 936 S.W.2d 343, 346 (Tex.App.—Fort Worth 1996, pet. ref'd).

■■ Here, the trial court granted the State's request to strike for cause Veniremembers Horne, Whorton, and Taylor after they informed the court during voir dire that they would be unwilling to consider the maximum punishment for aggravated robbery in a case where there was no serious bodily injury or death. In other words, the three would have altered the State's burden of proof by requiring the State to prove specific additional facts (serious bodily injury or death) before they would be willing to consider the full range of punishment as defined by law. Any prospective juror with that mind set is challengeable for cause. *See Sadler v. State,* 977 S.W.2d 140, 143 (Tex.Crim.App. 1998) (citing *Fuller,* 829 S.W.2d at 200). Appellant did not object when the trial court granted the State's motion to strike Veniremember Horne for cause, or, next, when the court granted the motion to strike Veniremember Whorton for cause. Consequently, the record does not preserve for appeal any complaint about the court's dismissal of those two prospective

jurors. *See Fuller v. State,* 827 S.W.2d 919, 924–25 (Tex.Crim.App.1992), *cert. denied,* 509 U.S. 922, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993). Accordingly, we overrule Appellant's issues number four and five.

■ Finally, when the State challenged Veniremember Taylor for cause, Appellant's counsel said "we object to that strike," but stated no ground for the objection. Appellant notes that aside from the three strikes the court granted for cause, the State expended all of its allotted peremptory challenges. Therefore, Appellant concludes that striking Taylor for cause enabled the State to avoid expending a peremptory challenge on Taylor and effectively gave the State an additional peremptory challenge. Appellant complains that adding the (unobjected-to) strikes of Horne and Whorton to Taylor's strike makes the State the beneficiary of "a wholesale exclusion" of all veniremembers who would not consider the maximum punishment the law allows for the crime charged in this case; and thereby, Appellant was deprived of a jury containing "a fair cross-section of the community." Appellant insists that he is guaranteed that sort of jury by the Sixth and Fourteenth Amendments to the federal constitution and by article 1, section 10 of the state constitution. He asks us to classify the court's exclusion of Veniremember Taylor as a constitutional error that would compel us to reverse Appellant's conviction unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or the resulting punishment. *See* TEX.R.APP. P. 44.2(a). However, the constitutional provisions on which Appellant relies require a trial by an *impartial* jury, not one that is "a cross-section of the community," and not every error in the selection of a jury violates the constitutional guarantee of an impartial jury. *See Jones v. State,* 982 S.W.2d 386, 391 (Tex. Crim.App.1998). Appellant has not shown that the jury seated in this case was not "lawfully constituted," *see id.* at 394, and

he did not preserve a constitutional issue for appellate review by objecting at the trial court on the constitutional grounds he now asserts.

Because the challenges of veniremembers for cause in this case are governed by the principles of law we have already discussed from *Sadler,* 977 S.W.2d at 143, and *Fuller,* 829 S.W.2d at 200, Appellant's rationale for his third, sixth, and seventh issues is not persuasive. We overrule issues number three, six, and seven.

## THE DESIRED JURY INSTRUCTION

■ The court's charge to the jury in the punishment phase of the trial included a reasonable doubt instruction on the enhancement and habitual offender allegations against Appellant. Appellant did not ask the trial court to also instruct the jury about the State's burden of proving beyond a reasonable doubt the extraneous offenses alleged as grounds for enhancing Appellant's punishment. Appellant's final issue asks us whether the trial court erred by not *sua sponte* charging the jury on that burden of proof. The answer is no. *See Posey v. State,* 966 S.W.2d 57, 61–62 (Tex.Crim.App.1998); *Tow v. State,* 953 S.W.2d 546, 548 (Tex.App.—Fort Worth 1997, no pet.). We overrule Appellant's eighth issue.

## CONCLUSION

We have carefully considered all of the evidence under the appropriate standards of review and have overruled each of the eight issues Appellant has presented. Finding no reversible error, we affirm the trial court's judgment.