COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-04-390-CR

 

 

MIRCEA VOLOSEN                                                               APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL
DISTRICT COURT NO. 3 OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

 

 

I.
Introduction

 








The trial court found Appellant Mircea Volosen
guilty of animal cruelty for killing a neighbor=s dog, a
miniature dachshund named Ginger.  The
trial court sentenced Volosen to one year=s
confinement, probated for two years.  The
sole issue we address in this appeal is whether the State met its burden of
presenting legally sufficient evidence that Volosen was Awithout
legal authority@ to kill the dog.  See Tex.
Penal Code Ann. ' 42.09(a)(5) (Vernon Supp.
2005).  Because, by statute,[1]
a dog that Ais attacking, is about to
attack, or has recently attacked . . . fowls may be killed by . . . any person
witnessing the attack@ and because no rational trier
of fact could have determined beyond a reasonable doubt that Ginger was not
attacking or had not recently attacked chickens in a pen in Volosen=s yard,
we hold that the evidence is legally insufficient to establish that Volosen
killed the dog Awithout legal authority@ as
required to sustain a conviction for animal cruelty.[2]  Accordingly, we will reverse the trial court=s
judgment and render a judgment of acquittal.

II.  The Law Regarding Animal Cruelty








The offense of cruelty to animals includes
intentionally or knowingly killing, seriously injuring, or administering poison
Ato an
animal, other than cattle, horses, sheep, swine, or goats, belonging to another
without legal authority or the owner=s
effective consent.@ 
Tex. Penal Code Ann. '
42.09(a)(5) (emphasis added).  The penal
code does not define the term Alegal
authority,@ but the health and safety code
contains a section explaining when a person does possess legal authority to
kill a dog.  See Nichols v.
State, 653 S.W.2d 768, 773 (Tex. Crim. App. [Panel Op.] 1983) (op. on reh=g)
(recognizing that, to ascertain the definition of an offense, statutes outside
the penal code may be examined).  Former
section 822.033 of the health and safety code provided,

(a) A dog that is attacking, is about to attack, or has recently
attacked sheep, goats, calves, or other domestic animals or fowls may be killed
by any person witnessing or having knowledge of the attack.

 

(b) A person who kills a dog as provided by this section is not liable
for damages to the owner of the dog.

 

(c) A dog known or suspected of having killed sheep, goats, calves, or
other domestic animals or fowls is a public nuisance.  Any person may detain or impound the dog
until the dog=s owner is notified and
all damage done by the dog has been determined and paid to the proper persons.

 

(d) The owner of a dog that is known to have attacked sheep, goats,
calves, or other domestic animals or fowls shall kill the dog.  A sheriff, deputy sheriff, constable, police
officer, magistrate, or county commissioner may enter the premises of the owner
of the dog and kill the dog if the owner fails to do so.

 

Act of May 16, 1989, 71st Leg., R.S., ch. 678, ' 1, sec.
822.033, 1989 Tex. Gen Laws 2230, 3142 (amended 2003).  








Because the health and safety code allows a
person to lawfully kill a dog that is attacking, is about to attack, or has
recently attacked that person=s fowls,
a person killing a dog under such circumstances possesses statutory legal
authority to kill the dog.  Thus, a
person authorized to kill a dog by former health and safety code section
822.033 cannot be said to be acting Awithout
legal authority@ to kill the dog as required to
commit the offense of cruelty to animals under penal code section
42.09(a)(5).  See Tex. Penal Code Ann. ' 42.09(a)(5);
Act of May 16, 1989, 71st Leg., R.S., ch. 678, ' 1, sec.
822.033(a), 1989 Tex. Gen Laws 2230, 3142 (amended 2003). 

III.  Factual Background








Kevin Ball and his family owned a miniature dachshund
named Ginger. Volosen, a veterinarian, lived directly behind Ball and kept
chickens in a pen in his backyard.  On
the morning of July 4, 2003, Ball and his friend, Robert Johnson, were in Ball=s
driveway preparing for a cookout.  Ball
noticed that GingerCwho had been with them in his
driveway minutes beforeCwas missing. He heard Volosen=s
chickens clucking and Asaw the chickens flutter across
[the pen] from one corner to the other.@  Ball Afigured
the dog was over there playing,@ and he
looked over the fence and saw Ginger inside the pen with the chickens.  He called for Ginger to come to him, and
Ginger stopped Alike, oh, no, I=m in
trouble.@  Volosen, who had been out in his yard,
entered the chicken pen carrying a maulCa tool
used to split logsCand Ball said, AHey,
sorry, she got out again.@ 
Volosen looked at Ball and then struck the dog with the maul, killing
it.   








Johnson called the police, and Officer Roy Kevin
Walling was dispatched to the scene. 
Volosen first told Officer Walling that Ball=s dog
was killing rabbits on his property, but when the officer asked if Volosen
could show him any dead rabbits, Volosen said that the dog was chasing
chickens, not rabbits. When Officer Walling asked if Volosen could show him any
dead chickens, Volosen took him to his backyard and pointed to a small shallow
hole in the ground that was not big enough for a stapler.  Volosen said that a dead chicken had been
lying there and that the dog must have carried it off, but Officer Walling said
that was impossible because the dog died in Volosen=s
yard.  The officer then arrested Volosen
because he failed to produce a dead animal.[3]        At trial, Ball testified that Ginger had
gone on Volosen=s property twice before July
4th; both occasions occurred a few months prior to the July 4th incident.  On one of those prior occasions, Volosen told
Ball to get Ginger off his property, and as Ball was retrieving his dog, he saw
a dead rabbit in an elevated cage inside the chicken pen.  Volosen told Ball that Ginger had killed the
rabbit. Volosen=s wife testified about the three
incidents.  She testified that her
husband told her the following: after the first incident, a rabbit died because
Ball=s dog
had attacked it; after the second incident, three chickens died because Ball=s dog
had attacked them; and after the July 4th incident, four chickens died as a
result of the trauma and stress they suffered. 
Mrs. Volosen admitted that she never personally saw a dog attack any
rabbits or chickens on her property.  Dr.
Liviu Pogan, a veterinarian with a specialization in poultry pathology,
testified that female chickens can die from peritonitis, an infection of the
abdomen caused by eggs falling into the abdominal cavity.  Dr. Pogan testified that peritonitis can
occur from trauma and that the injury may not be visible for several days.

IV.  Legal Insufficiency

Volosen contends that the evidence is legally
insufficient to prove that he was acting Awithout
legal authority@ under penal code section
42.09(a)(5) when he killed the dog.  He
argues that because the dog had attacked his chickens immediately before he
killed the dog, he had legal authority to kill it pursuant to former health and
safety code section 822.033.  Act of May
16, 1989, 71st Leg., R.S., ch. 678, ' 1, sec.
822.033, 1989 Tex. Gen Laws 2230, 3142 (amended 2003).








In reviewing the legal sufficiency of the
evidence to support a conviction, we view all the evidence in the light most
favorable to  the judgment in order to
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Hampton v. State, 165 S.W.3d 691, 693
(Tex. Crim. App. 2005).

This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.  Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789.  The trier of
fact is the sole judge of the weight and credibility of the evidence.  See
Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v.
State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency
review, we may not re-evaluate the weight and credibility of the evidence and
substitute our judgment for that of the fact finder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the
evidence in favor of the judgment.  Curry
v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).








The sufficiency of the evidence should be
measured by the elements of the offense as defined by the hypothetically
correct jury charge for the case.  Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); Ortiz v. State,
993 S.W.2d 892, 895 (Tex. App.CFort
Worth 1999, no pet.).  Such a charge
would be one that accurately sets out the law, is authorized by the indictment,
does not unnecessarily restrict the State=s
theories of liability, and adequately describes the particular offense for
which the defendant was tried.  Gollihar
v. State, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); Malik, 953
S.W.2d at 240.  The law as authorized by
the indictment means the statutory elements of the charged offense as modified
by the charging instrument.  See Curry,
30 S.W.3d at 404.  The standard of review
is the same for direct and circumstantial evidence cases.  Burden v. State, 55 S.W.3d 608, 613
(Tex. Crim. App. 2001); Kutzner v. State, 994 S.W.2d 180, 184 (Tex.
Crim. App. 1999).








The question we must answer is whether, viewing
the evidence in the light most favorable to the State, a rational trier of fact
could have found that Volosen did not have legal authority to kill Ginger.  Stated differently, we must determine whether
the evidence most favorable to the State shows that Ginger was not attacking,
was not about to attack, or had not recently attacked Volosen=s
chickens immediately prior to Volosen striking Ginger with the maul.  See Act of May 16, 1989, 71st Leg.,
R.S., ch. 678, ' 1, sec. 822.033(a), 1989 Tex.
Gen Laws 2230, 3142 (amended 2003); Jackson, 443 U.S. at 319, 99 S. Ct.
at 2789; Hampton, 165 S.W.3d at 693. 
Before turning to this issue, we address the State=s
arguments, both of which attempt to frame the issue differently.








The State contends that prior section 822.033(c)
vested Volosen with only legal authority to Adetain
or impound@ the dog, not to kill it,
because Volosen only Aknew or suspected@ that
the dog had killed his animals in the past. 
See Act of May 16, 1989, 71st Leg., R.S., ch. 678, ' 1, sec.
822.033(c), 1989 Tex. Gen Laws 2230, 3142 (amended 2003).  We agree that the attacks by Ginger that
occurred months prior to the dog=s July
4th entry into Volosen=s chicken pen did not authorize
Volosen to kill it on July 4th pursuant to former subsection 822.033(a) or
(c).  See id. at sec. 822.033(a),
(c); Bueckner v. Hamel, 886 S.W.2d 368, 372 (Tex. App.CHouston
[1st Dist.] 1994, writ denied).  But
former section 822.033(a) specifically authorizes a person to a kill a dog when
he witnesses the dog Aattacking@ fowls
or when the dog Ais about to attack[] or has
recently attacked@ fowls.  Act of May 16, 1989, 71st Leg., R.S., ch.
678, ' 1, sec.
822.033(a), 1989 Tex. Gen Laws 2230, 3142 (amended 2003).  And it is this subsectionC822.033(a)Cthat
Volosen claims vested him with legal authority to kill the dog, not subsection
822.033(c).  Accordingly, while the State=s
argument that Volosen could have impounded the dog under subsection 822.033(c)
based on its attacks months before July 4th is accurate, it provides no insight
into whether Volosen was Awithout legal authority@ to kill
the dog on July 4th based on the dog=s July
4th entry into Volosen=s chicken pen and its conduct in
the pen.

The State also argues that some physical injury
or harm is implicit in the use of the word Aattack@ and
that the absence of evidence that the chickens were physically harmed
constitutes some evidence that Ginger did not attack and was not attacking the
chickens in Volosen=s pen on July 4th.  The term Aattack@ is not
legally defined, and in construing a statute, we must give effect to the plain
meaning of the text unless the text is ambiguous or the plain meaning would
lead to absurd results.  Parfait v.
State, 120 S.W.3d 348, 349 (Tex. Crim. App. 2003) (citing Boykin v.
State, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)).  The use of legal or other well‑accepted
dictionaries is a method of determining the ordinary meaning of certain
words.  Jones v. State, 175 S.W.3d
927, 930 (Tex. App.CDallas 2005, no pet.).  Webster=s
Dictionary defines Aattack@ to
include Aan
offensive or antagonistic movement or action of any kind.@  Webster=s Third
New International Dictionary 140 (2002).








Further insight into the meaning of the term Aattack@ as used
in penal code section 49.02(a)(5) is contained in Bueckner v. Hamel.  886 S.W.2d at 372.  In Bueckner, the court of appeals held
that former health and safety code section 822.033 did not exempt the defendant
from civil liability for killing two dogs that had been Achasing@ deer on
the defendant=s property because deer were not
protected under the statute; the statute authorizes a person to kill a dog that
is attacking or has just attacked sheep, goats, calves, domestic animals, or
fowls, not deer.  Id.  Nonetheless, the court of appeals=
statement that the A[t]he [dogs=] attack
on the deer did not justify the shooting@ shows that,
although not relevant to its holding, the court determined that dogs Achasing@ deer
constituted an Aattack@ under
the statute.  See id. (emphasis
added).  Thus, we decline to
define Aattack@Cas that
term is used in former section 822.033 of the health and safety codeCas
requiring some physical injury or harm.








We now address the legal sufficiency of the
evidence to support the Awithout legal authority@ element
of the animal cruelty offense the State alleged Volosen committed.  The following evidence is that most favorable
to the verdict.  Ball testified that when
he noticed Ginger was missing, he heard Volosen=s
chickens clucking, but not squawking, and that they commonly make that
noise.  He testified that he saw Ginger
inside the chicken pen with the chickens but that Ginger was not chasing the
chickens and had not injured or killed any chickens that day.  Ball testified, AI said, >Ginger,
come,= and the
dog started to walk towards me, and it was kind of crouched down and looking up
at [Volosen], and that=s whenever [Volosen] chopped
down.  The dog probably took two steps,
two or three steps.@ 
Ball never saw any feathers or blood on Ginger.  Mrs. Volosen testified that she never saw
Ginger attacking animals on her property. 
Although Mrs. Volosen testified that four chickens died after the
incident on July 4th and claimed that their deaths resulted from the stress and
trauma of the incident, there was no necropsy done on those chickens to
determine the cause of death.  

Ball=s
uncontroverted testimony that he heard the chickens clucking from over 150 feet
away, that Ginger was inside Volosen=s
chicken pen, and that the chickens fluttered from one side of the pen to the
other begs the question, however; what else could Ginger have been doing in the
chicken pen but Aattacking@ the
chickens?  Ball testified that when he
saw the chickens fluttering around, he Afigured
the dog was over there playing.@  On cross- examination, Ball testified,  

Q.  And these fowl that you say
your dog was -- they weren=t wanting any part of that based on what you saw;
correct?

 

A.  I=m not going to read the
mind of a chicken, but they went to the opposite side, yes.

 

Q.  So [the chickens] didn=t appear as if they were
playing with your dog, right?

 

A.  I guess not.

 

. . . .

 








Q.  Appeared disturbed?

 

A.  Could be.

 

Q.  Worried? 

 

A.  Probably.  They weren=t squawking. 
They were making clucking sounds and going from one corner to the other.

 

Thus, Ball=s testimony shows that Ginger
was making offensive or antagonistic movements at the chickens, satisfying the
common meaning of the word Aattack.@  See Webster=s Third
New International Dictionary 140. 
Ball=s testimony also shows that
Ginger was Achasing@ the
chickensCthe
chickens were flying from one side of the pen to the other to escape GingerCthus
satisfying the definition of Aattack@ applied
by the Bueckner court.  See
Bueckner, 886 S.W.2d at 372.








Viewing all the evidence in the light most
favorable to the State, we cannot hold that a rational trier of fact could have
found that Ginger did not attack Volosen=s
chickens on the morning of July 4th immediately before Volosen struck and
killed it with the maul.  See Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Hampton, 165 S.W.3d at 693.  Because Ginger A[was]
attacking@ or A[had]
recently attacked@ Volosen=s
chickens on July 4th, Volosen was statutorily vested with legal authority to
kill the dog.  See Act of May 16,
1989, 71st Leg., R.S., ch. 678, ' 1, sec.
822.033(a), 1989 Tex. Gen Laws 2230, 3142 (amended 2003).  No evidence exists that Volosen acted Awithout
legal authority,@ specifically without the legal
authority conferred by former section 822.033(a), as required to sustain his
conviction for animal cruelty under penal code section 49.02(a)(5).  We sustain his first point, reverse the trial
court=s
judgment, and render a judgment of acquittal. 
See Tex. R. App. P.
43.2(c), 51.2(d); Greene v. Massey, 437 U.S. 19, 24-25, 98 S. Ct. 2151,
2154-55 (1978); Burks v. United States, 437 U.S. 1, 16-18, 98 S. Ct.
2141, 2150-51 (1978).

V. Conclusion

Having sustained Volosen=s first
point, we need not address his remaining points.[4]  We reverse the trial court=s
judgment and render a judgment of acquittal.

 

SUE
WALKER

JUSTICE

 

PANEL B:   DAUPHINOT, WALKER, and MCCOY, JJ.

 

PUBLISH

 

DELIVERED: February 16,
2006

 











[1]This statute was in
effect when Volosen allegedly committed the offense, but the legislature later
amended it, with minor substantive changes, and renumbered it.  See Act of May 16, 1989, 71st Leg.,
R.S., ch. 678, ' 1, sec. 822.033, 1989
Tex. Gen. Laws 2230, 3142, amended by Act of May 22, 2003, 78st Leg., R.S., ch.
1002, ' 1, sec. 822.033, 2003
Tex. Gen. Laws 2941, 2942 (codified as amended at Tex. Health & Safety Code Ann. ' 822.013 (Vernon Supp.
2005)).





[2]Tex.
Penal Code Ann. ' 42.09(a)(5).





[3]However, Officer Walling
testified at trial that the law does not require a dead animal in order to
justify the killing of a dog.  





[4]See Tex.
R. App. P.
47.1.