NUMBER 13-09-348-CR

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI - EDINBURG  

                                                                                                                     


 

TARIQ INAYATULLAH
KHAN,                                               Appellant,

 

v.

 

THE STATE OF TEXAS,                         
                             Appellee.

                                                                                                                     
  

 

On appeal from the 377th
District Court 

of Victoria County,
Texas.

                                                                                                                     


 

MEMORANDUM OPINION

 

Before Justices
Garza, Benavides, and Vela  

Memorandum Opinion by
Justice Vela

                                                                                                                                    

Appellant, Tariq Inayatullah Khan,
appeals from a conviction for aggravated robbery with a deadly weapon.  He was
sentenced to five years= imprisonment and assessed a
$5,000 fine.  By one issue, appellant argues that the evidence is insufficient
to sustain the deadly weapon finding.  We affirm. 

 

I.  Background Facts

Appellant was indicted by a grand jury
for the offense of aggravated robbery, a first-degree felony.  Tex. Penal Code Ann. § 29.03 (Vernon
2003).  He was accused of stealing a pair of weight lifting gloves from a
Wal-Mart store.  Appellant was also charged with intentionally, knowingly, or
recklessly causing or threatening to cause bodily injury to a Wal-Mart security
officer in the course of the theft.  The allegation was that appellant had
threatened the security guard with a knife.  The jury returned a guilty
verdict, and punishment was assessed at five years=
imprisonment, suspended.  The trial court ordered the period of community
supervision to last for a term of five years.  Appellant, a citizen of
Pakistan, was deported shortly after the trial.  

Appellant argues by his sole issue that
the trial court erred in sustaining a finding of a deadly weapon because there
was insufficient evidence to support the finding.  Specifically, he argues that
no knife was ever found, no witnesses, other than the victim, claimed to have
seen the knife, and although a review of all portions of the video showed
numerous onlookers, no one testified that they had seen a knife.  








Rey Alvarez, a loss prevention officer
for Wal-Mart, was the alleged victim in this case.  Alvarez testified that on
the evening of October 7, he was working loss prevention and noted appellant
behaving suspiciously.  According to Alvarez, appellant rolled a pair of gloves
into a pair of blue jeans that was in his basket, and walked from the sporting
goods department to the automotive department.  He testified that he then
observed appellant attempt to conceal the gloves in his front waistline. 
Alvarez said he saw appellant unbutton his shirt and tuck in the front
waistline to secure the gloves.  When appellant concealed the gloves, his back
was toward the surveillance video cameras that Wal-Mart had set up in the
store.  But Alvarez testified that even though it could not be seen on the
video, he saw appellant tuck the gloves in his waistline.  Alvarez further
testified that he confronted appellant at the vestibule door.  

Alvarez said that he introduced himself
to appellant as a Wal-Mart employee and asked appellant to come back inside. 
Appellant refused and told Alvarez that he was going to sue him.  Then,
appellant put his hands on Alvarez and the two Atussled.@ 
This continued into the parking lot, where Alvarez claims that he tried to get
control of appellant.  Alvarez testified that he heard something fall and then
appellant reached toward his left waistline, brought out a knife, and said ACome
on.@ 
Alvarez testified that, at that point, he backed off.  He described the knife
as a silver buck knife with a dark brown handle and a gold tip at the end. 
Alvarez said that the incident occurred around dusk.  He testified that the
knife placed him in fear of imminent bodily injury or death.[1]  


Alvarez testified that he then called
police.  After appellant left in his automobile, Alvarez found appellant=s
wallet on the ground.  Counsel for the State introduced the surveillance
videotapes of the incident.

On cross-examination, defense counsel
pointed out, through Alvarez, that Alvarez was dressed in plain clothes when he
confronted appellant.  He did not show appellant any sort of formal
identification at the time he made contact with appellant.  Alvarez testified
that he was much taller than appellant.  He agreed that the video did not show
appellant putting the gloves in his shirt.  But Alvarez said that he had a “clear
shot” and saw appellant hiding the gloves inside his shirt.  Alvarez agreed
with defense counsel that he couldn=t
produce the gloves, but stated it was because appellant drove off in his car
after exhibiting the knife.  Alvarez also agreed that there were many people
shown on the videotape, but that no one came to Alvarez=s
aid.   

Officer William Whitfield testified
that, while on duty, he responded to a call that a suspect had pulled a knife
on a loss prevention employee at Wal-Mart.  He spoke with Alvarez who said that
he couldn=t believe that Athis
guy had just pulled a knife on him.@ 
Alvarez gave the officer appellant=s
wallet.  Officer Whitfield testified that a knife is capable of causing serious
bodily injury.  On cross-examination, the officer agreed that Alvarez did not
describe the knife to him, other than to say it had a silver blade.  Officer
Whitfield agreed that if someone comes up to an individual in plain clothes,
purporting to be a Wal-Mart employee, one might be “a little leery”.  It would
not be unusual for a person to push away from another under these
circumstances.








Detective Jeffrey Lehnert testified that
he was informed that after the incident, appellant had come to the police
station to retrieve his wallet.  Detective Lehnert came in contact with
appellant a few days after the incident.  He reviewed the surveillance video, which
he said showed appellant and Alvarez struggling in the parking lot and noted
that when appellant took something from his waistband, Alvarez backed off.  On
cross examination, counsel for appellant questioned the officer about why it
had taken the State almost a year to indict appellant.  He said he could not
explain the delay.  Detective Lehnert also said that when appellant came to the
police station, appellant=s credit cards were returned
to him.  He agreed that no knife was recovered.  

II.  Standard of Review

When conducting a legal sufficiency
review, a court must ask whether Aany
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt,@ not whether the court
believes that the evidence at trial established guilt beyond a reasonable
doubt.  Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); see Brooks
v. State, No. PD-0210-09, 2010 WL 3894613, at *1 (Tex. Crim. App. Oct. 6,
2010).  A legal sufficiency analysis requires a court to view all of the
evidence in a light most favorable to the prosecution in order to determine
whether a reasonable trier of fact could have found all of the essential
elements of the crime beyond a reasonable doubt.  Jackson, 443 U.S. at
318-19.  This standard gives full play to the responsibility of the trier of
fact to resolve conflicts in the testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts.  Jackson, 443
U.S. at 319.  

III.  Applicable Law and Analysis








Use or exhibition of a deadly weapon
during the commission of a robbery elevates the offense from second-degree
robbery to first-degree aggravated robbery. 
Tex. Penal Code Ann. '' 29.02, 29.03.  For a knife
to be a deadly weapon, it must be used or intended to be used in a manner that
is capable of causing serious bodily injury or death.  Id. '
1.07 (a)(17)(B) (Vernon 2003).  A person uses or exhibits a deadly weapon under
the aggravated robbery statute if he employs the weapon in any manner that
facilitates the associated felony.  McCain v. State, 22 S.W.3d 497, 502
(Tex. Crim. App. 2000).  A knife is not a deadly weapon per se.  See
Robertson v. State, 163 S.W.3d 730, 732 (Tex. Crim. App. 2005); Thomas
v. State, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991).  However, a knife may
become a deadly weapon depending on the manner in which the actor uses it. 

The plain language of section
1.07(a)(17)(B) of the penal code does not require that the actor actually
intend death or serious bodily injury; an object is a deadly weapon if the
actor intends a use of the object in which it would be capable of causing death
or serious bodily injury.  See Tex.
Penal Code Ann. ' 1.07 (a)(17)(B).  The
placement of the word Acapable@ in
the provision enables the statute to cover conduct that threatens deadly force,
even if the actor has no intention of actually using deadly force.  McCain
v. State, 22 S.W.3d at 503.








Factors to be considered in determining
whether a knife is intended to be used as a deadly weapon include:  (1) the
distance between the accused and the victim; (2) threats or words used by the
defendant; (3) the size and shape of the weapon; (4) the weapon's ability to
inflict death or serious injury; and (5) the manner in which the defendant used
the weapon.  Bailey v. State, 46 S.W.3d 487, 491 (Tex. App.−Corpus
Christi 2001, pet. ref'd); Billey v. State, 895 S.W.2d 417, 420-21 (Tex.
App.−Amarillo 1995, pet. ref'd).  Also, an intent to inflict serious
bodily injury or death may be shown by evidence of assertive conduct by an
attacker.  Ortiz v. State, 993 S.W.2d 892, 894 (Tex. App.BFort
Worth 1999, no pet.).  The actual knife used in the commission of an offense
need not be introduced into evidence if a witness is able to testify about the
knife and the manner in which it was used.  Billey, 895 S.W.2d at 420. 
Either expert testimony or lay testimony may be sufficient to support a deadly
weapon finding.  English v. State, 647 S.W.2d 667, 668-69 (Tex. Crim.
App.1983); Bailey, 46 S.W.3d at 492.

Here, Alvarez testified that he was
engaged in a physical skirmish with appellant when appellant pulled out a
knife.  Alvarez described the length of the knife blade as three to four inches
long and introduced a knife that Alvarez claimed was similar to the one that
appellant brandished.  Alvarez testified, without objection, that he feared for
his life and believed the knife used was capable of causing serious bodily
injury or death.  After Alvarez saw the knife, he took a step backward and let
appellant know that Alvarez was no longer interested in apprehending him. 
While no one other than Alvarez saw the knife and the knife was not seen on the
video, it is the jury’s province to resolve conflicts in the evidence, to weigh
the evidence, and to draw reasonable inferences.  Jackson, 443 U.S. at
319.

Viewing the evidence in accordance with
the standard set forth in Jackson, we find that the evidence supports
the jury=s
deadly weapon finding.  A rational trier of fact could have found that
appellant used a deadly weapon based upon the evidence presented to the jury at
trial.  Accordingly, the evidence was legally sufficient to support the deadly
weapon finding in this case.  We overrule appellant=s
sole issue.

IV.  Conclusion 

Having overruled
appellant=s sole issue, we
affirm the conviction.  

 

                                                                                         ROSE
VELA

                                                                                         Justice

Do not publish.

Tex.
R. App. P.
47.2(b).

 

Delivered and filed
the  

21st day of December,
2010.









[1]Alvarez brought a knife with him to
trial that he said was similar to the one he claimed appellant exhibited.
Appellant objected to its introduction. It was offered and accepted into
evidence as a demonstrative aid.