

**NUMBER 13-09-348-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**TARIQ INAYATULLAH KHAN,**           **Appellant,**

**v.**

**THE STATE OF TEXAS,**           **Appellee.**

### On appeal from the 377th District Court
### of Victoria County, Texas.

# MEMORANDUM OPINION

### Before Justices Garza, Benavides, and Vela
### Memorandum Opinion by Justice Vela

Appellant, Tariq Inayatullah Khan, appeals from a conviction for aggravated robbery with a deadly weapon. He was sentenced to five years' imprisonment and assessed a $5,000 fine. By one issue, appellant argues that the evidence is insufficient to sustain the deadly weapon finding. We affirm.

## I. BACKGROUND FACTS

Appellant was indicted by a grand jury for the offense of aggravated robbery, a first-degree felony. TEX. PENAL CODE ANN. § 29.03 (Vernon 2003). He was accused of stealing a pair of weight lifting gloves from a Wal-Mart store. Appellant was also charged with intentionally, knowingly, or recklessly causing or threatening to cause bodily injury to a Wal-Mart security officer in the course of the theft. The allegation was that appellant had threatened the security guard with a knife. The jury returned a guilty verdict, and punishment was assessed at five years' imprisonment, suspended. The trial court ordered the period of community supervision to last for a term of five years. Appellant, a citizen of Pakistan, was deported shortly after the trial.

Appellant argues by his sole issue that the trial court erred in sustaining a finding of a deadly weapon because there was insufficient evidence to support the finding. Specifically, he argues that no knife was ever found, no witnesses, other than the victim, claimed to have seen the knife, and although a review of all portions of the video showed numerous onlookers, no one testified that they had seen a knife.

Rey Alvarez, a loss prevention officer for Wal-Mart, was the alleged victim in this case. Alvarez testified that on the evening of October 7, he was working loss prevention and noted appellant behaving suspiciously. According to Alvarez, appellant rolled a pair of gloves into a pair of blue jeans that was in his basket, and walked from the sporting goods department to the automotive department. He testified that he then observed appellant attempt to conceal the gloves in his front waistline. Alvarez said he saw appellant unbutton his shirt and tuck in the front waistline to secure the gloves. When

2

appellant concealed the gloves, his back was toward the surveillance video cameras that Wal-Mart had set up in the store. But Alvarez testified that even though it could not be seen on the video, he saw appellant tuck the gloves in his waistline. Alvarez further testified that he confronted appellant at the vestibule door.

Alvarez said that he introduced himself to appellant as a Wal-Mart employee and asked appellant to come back inside. Appellant refused and told Alvarez that he was going to sue him. Then, appellant put his hands on Alvarez and the two "tussled." This continued into the parking lot, where Alvarez claims that he tried to get control of appellant. Alvarez testified that he heard something fall and then appellant reached toward his left waistline, brought out a knife, and said "Come on." Alvarez testified that, at that point, he backed off. He described the knife as a silver buck knife with a dark brown handle and a gold tip at the end. Alvarez said that the incident occurred around dusk. He testified that the knife placed him in fear of imminent bodily injury or death.[1]

Alvarez testified that he then called police. After appellant left in his automobile, Alvarez found appellant's wallet on the ground. Counsel for the State introduced the surveillance videotapes of the incident.

On cross-examination, defense counsel pointed out, through Alvarez, that Alvarez was dressed in plain clothes when he confronted appellant. He did not show appellant any sort of formal identification at the time he made contact with appellant. Alvarez testified that he was much taller than appellant. He agreed that the video did not show

---

[1]Alvarez brought a knife with him to trial that he said was similar to the one he claimed appellant exhibited. Appellant objected to its introduction. It was offered and accepted into evidence as a demonstrative aid.

appellant putting the gloves in his shirt. But Alvarez said that he had a "clear shot" and saw appellant hiding the gloves inside his shirt. Alvarez agreed with defense counsel that he couldn't produce the gloves, but stated it was because appellant drove off in his car after exhibiting the knife. Alvarez also agreed that there were many people shown on the videotape, but that no one came to Alvarez's aid.

Officer William Whitfield testified that, while on duty, he responded to a call that a suspect had pulled a knife on a loss prevention employee at Wal-Mart. He spoke with Alvarez who said that he couldn't believe that "this guy had just pulled a knife on him." Alvarez gave the officer appellant's wallet. Officer Whitfield testified that a knife is capable of causing serious bodily injury. On cross-examination, the officer agreed that Alvarez did not describe the knife to him, other than to say it had a silver blade. Officer Whitfield agreed that if someone comes up to an individual in plain clothes, purporting to be a Wal-Mart employee, one might be "a little leery". It would not be unusual for a person to push away from another under these circumstances.

Detective Jeffrey Lehnert testified that he was informed that after the incident, appellant had come to the police station to retrieve his wallet. Detective Lehnert came in contact with appellant a few days after the incident. He reviewed the surveillance video, which he said showed appellant and Alvarez struggling in the parking lot and noted that when appellant took something from his waistband, Alvarez backed off. On cross examination, counsel for appellant questioned the officer about why it had taken the State almost a year to indict appellant. He said he could not explain the delay. Detective Lehnert also said that when appellant came to the police station, appellant's credit cards

4

were returned to him.   He agreed that no knife was recovered.

## II.  STANDARD OF REVIEW

When conducting a legal sufficiency review, a court must ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," not whether the court believes that the evidence at trial established guilt beyond a reasonable doubt.   *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *see Brooks v. State*, No. PD-0210-09, 2010 WL 3894613, at *1 (Tex. Crim. App. Oct. 6, 2010).   A legal sufficiency analysis requires a court to view all of the evidence in a light most favorable to the prosecution in order to determine whether a reasonable trier of fact could have found all of the essential elements of the crime beyond a reasonable doubt.   *Jackson*, 443 U.S. at 318-19.   This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.   *Jackson*, 443 U.S. at 319.

## III.  APPLICABLE LAW AND ANALYSIS

Use or exhibition of a deadly weapon during the commission of a robbery elevates the offense from second-degree robbery to first-degree aggravated robbery.   TEX. PENAL CODE ANN. §§ 29.02, 29.03.   For a knife to be a deadly weapon, it must be used or intended to be used in a manner that is capable of causing serious bodily injury or death. *Id.* § 1.07 (a)(17)(B) (Vernon 2003).   A person uses or exhibits a deadly weapon under the aggravated robbery statute if he employs the weapon in any manner that facilitates the associated felony.   *McCain v. State,* 22 S.W.3d 497, 502 (Tex. Crim. App. 2000).   A knife is not a deadly weapon per se.   *See Robertson v. State,* 163 S.W.3d 730, 732 (Tex.

5

Crim. App. 2005); *Thomas v. State,* 821 S.W.2d 616, 620 (Tex. Crim. App. 1991). However, a knife may become a deadly weapon depending on the manner in which the actor uses it.

The plain language of section 1.07(a)(17)(B) of the penal code does not require that the actor actually intend death or serious bodily injury; an object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury. *See* TEX. PENAL CODE ANN. § 1.07 (a)(17)(B). The placement of the word "capable" in the provision enables the statute to cover conduct that threatens deadly force, even if the actor has no intention of actually using deadly force. *McCain v. State,* 22 S.W.3d at 503.

Factors to be considered in determining whether a knife is intended to be used as a deadly weapon include: (1) the distance between the accused and the victim; (2) threats or words used by the defendant; (3) the size and shape of the weapon; (4) the weapon's ability to inflict death or serious injury; and (5) the manner in which the defendant used the weapon. *Bailey v. State,* 46 S.W.3d 487, 491 (Tex. App.–Corpus Christi 2001, pet. ref'd); *Billey v. State,* 895 S.W.2d 417, 420-21 (Tex. App.–Amarillo 1995, pet. ref'd). Also, an intent to inflict serious bodily injury or death may be shown by evidence of assertive conduct by an attacker. *Ortiz v. State,* 993 S.W.2d 892, 894 (Tex. App.–Fort Worth 1999, no pet.). The actual knife used in the commission of an offense need not be introduced into evidence if a witness is able to testify about the knife and the manner in which it was used. *Billey,* 895 S.W.2d at 420. Either expert testimony or lay testimony may be sufficient to support a deadly weapon finding. *English v. State,* 647

6

S.W.2d 667, 668-69 (Tex. Crim. App.1983); *Bailey,* 46 S.W.3d at 492.

Here, Alvarez testified that he was engaged in a physical skirmish with appellant when appellant pulled out a knife. Alvarez described the length of the knife blade as three to four inches long and introduced a knife that Alvarez claimed was similar to the one that appellant brandished. Alvarez testified, without objection, that he feared for his life and believed the knife used was capable of causing serious bodily injury or death. After Alvarez saw the knife, he took a step backward and let appellant know that Alvarez was no longer interested in apprehending him. While no one other than Alvarez saw the knife and the knife was not seen on the video, it is the jury's province to resolve conflicts in the evidence, to weigh the evidence, and to draw reasonable inferences. *Jackson*, 443 U.S. at 319.

Viewing the evidence in accordance with the standard set forth in *Jackson*, we find that the evidence supports the jury's deadly weapon finding. A rational trier of fact could have found that appellant used a deadly weapon based upon the evidence presented to the jury at trial. Accordingly, the evidence was legally sufficient to support the deadly weapon finding in this case. We overrule appellant's sole issue.

## IV.  CONCLUSION

Having overruled appellant's sole issue, we affirm the conviction.

ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
21st day of December, 2010.

7