COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO. 2-05-056-CR

 

 

ALEXANDER
RIVERA                                                            APPELLANT

 

                                                   V.

 

THE STATE OF
TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I.  Introduction








A jury convicted
Alexander Rivera of aggravated robbery and assessed his punishment at forty
years= confinement and a $5,000 fine.  The trial court sentenced him
accordingly.  In three points, Rivera
complains that the trial court erred by denying his motion to suppress evidence
and that the evidence is both legally and factually insufficient to support the
jury=s verdict.  We
will affirm.

II.  Factual and Procedural
Background

On December 30,
2003, Ruth Palmer, an eighty-two-year-old woman, was loading groceries into her
car in the parking lot of a Fiesta Food Mart. 
As she climbed into the driver=s seat of her car, Rivera entered the back seat
without her knowledge and sat directly behind her.  Rivera put his finger to the back of Palmer=s head
to make her think he had a gun.  He
instructed her to drive away and told her that he would hurt her if she made
any sound.  About ten to twenty minutes
later, Rivera left Palmer in a grocery store parking lot and drove away in her
car.  Palmer then went to the hospital
and complained of chest pain. 
Physicians ultimately diagnosed her as having suffered a small heart
attack.[2]









Several hours after
the offense, Rivera parked Palmer=s car near the residence of his friend, Kristi
Jacobs.  Rivera remained at Jacobs=s
residence until daybreak.  When he drove
away in Palmer=s car, police officers who had been conducting
surveillance on the car pursued him. 
Rivera did not pull over and a high speed chase ensued.  Rivera jumped out of the car while it was
still moving.  He fled, and an officer
and police dog eventually caught him. 
The police arrested Rivera and took him to a Fort Worth police
station.  

At the station,
Rivera asked Detective Jason East whether a particular detective with whom
Rivera had had prior contact was working that day, and Detective East told
Rivera that the detective was unavailable. 
Detective East then read Rivera his rights, and Rivera also read and
signed a form acknowledging his rights. 
Rivera then confessed that he had entered Palmer=s
vehicle in the Fiesta Food Mart parking lot, used his finger to make her think
he had a gun, forced her to drive around, dropped her off, and then departed in
her vehicle.  Rivera orally gave the
statement to Detective East, and Detective East wrote it out in his
handwriting.  Rivera initialed each
paragraph and signed the bottom of each page. 
Rivera then added in his own handwriting, AI did not want to hurt her at all!  And am very sorry for what happened.  I was on drugs and was not thinking right!@  He initialed that statement.    

Rivera filed a
motion to suppress his statement, and the trial court carried the motion along
with the trial.  After hearing the
motion outside the presence of the jury, the court denied it.

III.  Motion to Suppress








During the
suppression hearing, Rivera=s counsel asked Detective East whether it was possible
that Rivera was under the influence of drugs when he confessed, and Detective
East responded by stating, ALooks like he was drugged out . . . .@  Detective East testified that A[d]rugged
out is a term[] that we use in law enforcement [to describe] someone who
appears to have been staying up for long hours for an extended period of time
who lives that life but [is] not necessarily on drugs at that time.@  Rivera=s counsel asked Detective East whether it was possible
that Rivera was not in his right mind when he confessed, and Detective East
responded that it was possible.   








Rivera testified
that he tried to tell Detective East that he had obtained Palmer=s car
from a man named Juan Martinez but that Detective East was not interested in
hearing anything further about Martinez because he did not believe Rivera.  Rivera further testified that he confessed because
he Awas afraid that [Detective East] was going to put . .
. murder charges on [him] like he had told [him]@ and because he was threatened.[3]  Rivera testified that he had smoked Aice@[4] with Jacobs from midnight until 6:00 a.m. on the day
he confessed.  In denying Rivera=s motion
to suppress, the trial court concluded that 

if we are going to
say what=s common knowledge, I=m of the opinion that methamphetamine is not
necessarily mind-altering to the extent that other drugs are. . . . Taken in
great quantity over a long period of time I understand it can cause
psychosis.  That=s not
what we have here.  We certainly don=t have a
psychotic defendant.  We have a
defendant who planned apparently, who was able to remember what was going on
and [who] testified about his statement. 
And I find that the statement was freely and voluntarily made without
coercion or promises or hope of reward. 
And that he understood the rights that he had and he waived them. . . .
And the Court finds that [Rivera=s statements] are admissible in all respects as a
matter of law. 

In his first point,
Rivera complains that the trial court erred by denying his motion to suppress
his confession because he was on methamphetamine at the time he confessed.  Rivera contends that the court incorrectly
determined that methamphetamine was not a Amind-altering drug.@  The State
responds that Rivera=s testimony does not indicate that he confessed
because he was under the influence of methamphetamine and that Rivera was
capable of making the choice to confess.








We review a trial
court=s ruling on a motion to suppress evidence under a
bifurcated standard of review.  Carmouche
v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 
In reviewing the trial court=s decision, we do not engage in our own factual
review.  Romero v. State, 800
S.W.2d 539, 543 (Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857,
861 (Tex. App.CFort Worth 2003, no pet.).  The trial judge is the sole trier of fact and judge of the
credibility of the witnesses and the weight to be given their testimony.  State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000); State v. Ballard, 987 S.W.2d 889, 891 (Tex.
Crim. App. 1999).  Therefore, we give
almost total deference to the trial court=s rulings on (1) questions of historical fact and (2)
application‑of‑law‑to‑fact questions that turn on an
evaluation of credibility and demeanor. 
Johnson v. State, 68 S.W.3d 644, 652‑53 (Tex. Crim. App.
2002); State v. Ballman, 157 S.W.3d 65, 68 (Tex. App.CFort
Worth 2004, pet. ref=d).  But when
the trial court=s rulings do not turn on the credibility and demeanor
of the witnesses, we review de novo a trial court=s rulings on mixed questions of law and fact.  Estrada v. State, 154 S.W.3d 604, 607
(Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652‑53.








In determining
whether a trial court=s decision is supported by the record, we generally
consider only evidence adduced at the suppression hearing because the ruling
was based on it rather than evidence introduced later.  See Rachal v. State, 917 S.W.2d 799,
809 (Tex. Crim. App.), cert. denied, 519 U.S. 1043 (1996).  But this general rule is inapplicable when
the parties consensually relitigated the suppression issue during trial on the
merits.  Id.  If the State raised the issue at trial
either without objection or with subsequent participation in the inquiry by the
defense, the defendant is deemed to have elected to re‑open the evidence,
and we may consider the relevant trial testimony in our review.  Id.








The statement of an
accused may be used in evidence if it was freely and voluntarily made without
compulsion or persuasion.  Tex. Code Crim. Proc. Ann. art. 38.21
(Vernon 2005).  The determination of
whether a confession is voluntary is based on an examination of the totality of
the circumstances surrounding its acquisition. 
Reed v. State, 59 S.W.3d 278, 281 (Tex. App.CFort
Worth 2001, pet. ref=d).  A confession
is involuntary if circumstances show that the defendant=s will
was Aoverborne@ by police coercion. 
Creager v. State, 952 S.W.2d 852, 856 (Tex. Crim. App.
1997).  In other words, a statement is
involuntary if the record reflects Aofficial, coercive conduct of such a nature@ that
any statement obtained thereby is Aunlikely to have been the product of an essentially
free and unconstrained choice by its maker.@  Alvarado
v. State, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995).  Intoxication alone does not render a
confession involuntary.  Jones v.
State, 944 S.W.2d 642, 651 (Tex. Crim. App. 1996), cert. denied, 522
U.S. 832 (1997); Garcia v. State, 919 S.W.2d 370, 387 (Tex. Crim. App.
1996) (op. on reh=g). 
Additionally, lack of sleep or food alone will not render a confession
involuntary.  Chambers v. State,
866 S.W.2d 9, 20 (Tex. Crim. App. 1993), cert. denied, 511 U.S. 1100
(1994).

Here, Rivera
testified at the suppression hearing that he had told Detective East that he
had a methamphetamine habit, that he had been awake smoking Aice@ for the
preceding three or four days, and that he had smoked Aice@ with
Jacobs from midnight until 6:00 a.m. on the day he confessed.  He testified during the trial that he was
high on methamphetamine when he confessed. 
The fact that Rivera may have been under the influence of
methamphetamine when he confessed does not automatically render the confession
involuntary.  See Jones, 944
S.W.2d at 651; Garcia, 919 S.W.2d at 387.








Instead, we must
look at the totality of the circumstances surrounding Rivera=s
confession to determine whether it was freely given.  See Reed, 59 S.W.3d at 281.  When Rivera arrived at the police station, he asked Detective
East about another detective with whom he was familiar.  After Detective East read Rivera his rights,
Rivera signed a sheet indicating that he understood his rights and proceeded to
discuss the offense with Detective East. 
Rivera gave a statement, and Detective East wrote it down.  Rivera read the statement, initialed each
paragraph, and signed the bottom of each page. 
Rivera then added a mitigating statement in his own handwriting
explaining that he did not mean to hurt Palmer and that he was on drugs at the
time of the offense.  We hold that the
totality of the circumstances surrounding Rivera=s confession indicates that he was aware of his
surroundings, that he understood his rights and the effect of his confession,
and that he had the ability to think defensively and to offer a mitigating
statement.  See Reed, 59 S.W.3d
at 281.  Thus, we hold that Rivera
freely and voluntarily gave his confession and that the trial court did not
abuse its discretion by denying Rivera=s motion to suppress the confession.  See Tex.
Code Crim. Proc. Ann. art. 38.21. Accordingly, we overrule Rivera=s first
point.

IV.  Sufficiency of the
Evidence








In his second and
third points, Rivera contends that the evidence is legally and factually
insufficient to support the jury=s verdict. 
Specifically, Rivera contends that the State failed to prove beyond a
reasonable doubt that Rivera threatened or placed Palmer in fear of imminent
bodily injury or death because there are other reasons why Palmer was upset at
the hospital.  The State responds that
there is sufficient evidence in the record to prove beyond a reasonable doubt
that Rivera threatened or placed Palmer in fear of imminent bodily injury or
death. 

A.  Standards of Review

In reviewing the
legal sufficiency of the evidence to support a conviction, we view all the
evidence in the light most favorable to the verdict in order to determine
whether any rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v.
State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).








This standard gives
full play to the responsibility of the trier of fact to resolve conflicts in
the testimony, to weigh the evidence, and to draw reasonable inferences from
basic facts to ultimate facts.  Jackson,
443 U.S. at 319, 99 S. Ct. at 2789.  The
trier of fact is the sole judge of the weight and credibility of the
evidence.  See Tex. Code Crim. Proc. Ann. art. 38.04
(Vernon 1979); Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App.
2000).  Thus, when performing a legal
sufficiency review, we may not re-evaluate the weight and credibility of the
evidence and substitute our judgment for that of the fact finder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the
evidence in favor of the verdict.  Curry
v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

The sufficiency of
the evidence should be measured by the elements of the offense as defined by
the hypothetically correct jury charge for the case.  Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App.
1997); Ortiz v. State, 993 S.W.2d 892, 895 (Tex. App.CFort
Worth 1999, no pet.).  Such a charge
would be one that accurately sets out the law, is authorized by the indictment,
does not unnecessarily restrict the State=s theories of liability, and adequately describes the
particular offense for which the defendant was tried.  Gollihar v. State, 46 S.W.3d 243, 253 (Tex. Crim. App.
2001); Malik, 953 S.W.2d at 240. 
The law as authorized by the indictment means the statutory elements of
the charged offense as modified by the charging instrument.  See Curry, 30 S.W.3d at 404.

The standard of
review is the same for direct and circumstantial evidence cases.  Burden v. State, 55 S.W.3d 608, 613
(Tex. Crim. App. 2001); Kutzner v. State, 994 S.W.2d 180, 184 (Tex.
Crim. App. 1999).








In contrast, in
reviewing the factual sufficiency of the evidence to support a conviction, we
are to view all the evidence in a neutral light, favoring neither party.  See Zuniga v. State, 144 S.W.3d 477,
481 (Tex. Crim. App. 2004).  The only
question to be answered in a factual sufficiency review is whether, considering
the evidence in a neutral light, the fact finder was rationally justified in finding
guilt beyond a reasonable doubt.  Id.
at 484.  There are two ways evidence may
be factually insufficient:  (1) when the
evidence supporting the verdict or judgment, considered by itself, is too weak
to support the finding of guilt beyond a reasonable doubt; or (2) when there is
evidence both supporting and contradicting the verdict or judgment and,
weighing all of the evidence, the contrary evidence is so strong that guilt
cannot be proven beyond a reasonable doubt. 
Id. at 484-85.  AThis
standard acknowledges that evidence of guilt can >preponderate= in favor of conviction but still be insufficient to
prove the elements of the crime beyond a reasonable doubt.@  Id. at 485.  In other words, evidence supporting a guilty finding can outweigh
the contrary proof but still be insufficient to prove the elements of an
offense beyond a reasonable doubt.  Id.   In performing a factual sufficiency review,
we are to give deference to the fact finder=s determinations, including determinations involving
the credibility and demeanor of witnesses. 
Id. at 481; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1997).  We may not substitute our
judgment for the fact finder=s.  Zuniga, 144
S.W.3d at 482.  








A proper factual
sufficiency review requires an examination of all the evidence.  Id. at 484, 486-87.  An opinion addressing factual sufficiency
must include a discussion of the most important and relevant evidence that
supports the appellant=s complaint on appeal.  Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

B.  Evidence of Threat or Fear of Imminent
Bodily Injury or Death

To convict Rivera
of aggravated robbery, the State was required to prove that in the course of
committing theft and with intent to obtain or maintain control of the vehicle,
Rivera intentionally, knowingly, or recklessly caused bodily injury to Palmer
or intentionally or knowingly threatened or placed Palmer in fear of imminent
bodily injury or death.  See Tex. Penal Code Ann. ' 29.02(a)
(Vernon 2005).  A robbery becomes
aggravated if a defendant commits a robbery as defined in section 29.02 and he Auses or
exhibits a deadly weapon@ or if a defendant Acauses bodily injury to another person or threatens or
places another person in fear of imminent bodily injury or death@ and
that person is sixty-five years of age or older.  See id. ' 29.03(a)(2), (3)(A). 
The fear must be of such nature as in reason and common experience is
likely to induce a person to part with his property against his will.  Green v. State, 567 S.W.2d 211, 213
(Tex. Crim. App. [Panel Op.] 1978). 








The indictment
charged Rivera with Aintentionally or knowingly, while in the course of
committing theft . . ., threaten[ing] or plac[ing] Ruth Palmer, a person 65
years of age or older, in fear of imminent bodily injury or death.@  At trial, the State primarily relied upon
Rivera=s confession, Palmer=s medical records, and the testimony of Palmer=s sister
to prove that Rivera threatened or placed Palmer in fear of imminent bodily
injury or death.  In Rivera=s
confession, he stated, 

I observed an old white female (Ruth Palmer) getting
into [her car]. As she got in the vehicle, I got in the rear seat when her back
was turned. While I was sitting behind her, I put my finger to the back of her
head to make her think I had a gun.  I
told her to drive away and not make a sound or she would get hurt.  As we left the parking lot of Fiesta Food
store, we drove by her house.  I told
her to go there.  As we arrived at her
house, she continued to drive down the street, Timberline.  I then made her drive around for awhile.  I kept her in the car for approximately
10-20 minutes until I found a place to let her out.  We drove for a while until I decided to let her go.  I told her to pull into the parking lot of
Sack & Save so I could finally release her.  She did and I told her to get out. I then drove away in the car. 

 

Palmer=s
sister, Ruby Harrell, testified that Palmer called her and said that she had
been carjacked.  Harrell testified that
Palmer sounded Avery upset and anxious@ and Aexcited.@  She also
testified that Palmer did not Atalk in her normal voice@ during that telephone conversation. 

Palmer=s
medical records indicate that medical professionals described her as Aupset,@ Atearful,@ and Afrightened.@  Additionally, Palmer=s
medical records show that Palmer reported that she was








abducted at gunpoint and had her car stolen while at
the grocery store.  She reports that a
man allegedly came up to her with a gun in hand and abducted [her] for a period
of approximately one half hour. She drove around with him.  She denies any trauma or any injury during
the episode. Emotionally, however, she was extremely stressed.  She subsequently managed to effect her
escape from the perpetrator and the police [were] called. 

 

Palmer=s
medical records also show that she was 

robbed/held up . .
. . [Palmer] had gun pulled on her and [gunman] made [her] drive with gunman in
back seat.  [Palmer] upset on exam.  [Palmer] now [complains of] chest discomfortCAfeels like someone sitting on [her] chest.@  [Palmer] was made to drive for 30 min.Ctearful
on exam. 

Harrell testified
that after the offense, Palmer was Avery anxious all the time@ and
that Ashe had trouble sleeping and had nightmares.@  Harrell also testified that after the offense,
Palmer changed the locks on the doors to her house. 








Despite this
evidence, the defense contends that Palmer could have been upset at the
hospital because of her small heart attack or the stress of having a physical
examination.  At trial, Rivera argued
that Palmer was upset at the hospital because she was in pain from the heart
attack and because the heart attack reminded her of her mortality.  Dr. Brian McNamara testified that some small
heart attacks are painful enough to make a person cry.  Dr. McNamara=s testimony also indicated that, at the time of the
offense, Palmer had Asignificant heart problems,@
including coronary artery disease, congestive heart failure, and Aweakness
of the pump function of the heart.@ 

Viewing this
evidence in a light most favorable to the verdict, we hold that a rational
trier of fact could have found that Rivera intentionally or knowingly
threatened or placed Palmer in fear of imminent bodily injury or death.  See Jackson, 443 U.S. at 319, 99 S.
Ct. at 2789; Hampton, 165 S.W.3d at 693.  Furthermore, viewing all the evidence in a neutral light,
favoring neither party, we hold that the jury was rationally justified in
finding that Rivera intentionally or knowingly threatened or placed Palmer in
fear of imminent bodily injury or death. 
See Zuniga, 144 S.W.3d at 481. 
Even if other possibilities exist as to why Palmer was upset at the
hospital, those possibilities are not so strong that Rivera=s guilt
cannot be proven beyond a reasonable doubt. 
See id. at 484-85. 
Accordingly, we hold that the evidence was legally and factually
sufficient to support the jury=s verdict.  See
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Hampton, 165 S.W.3d at
693; Zuniga, 144 S.W.3d at 481. 
We overrule Rivera=s second and third points.

V.  Conclusion

Having overruled
each of Rivera=s three points, we affirm the trial court=s
judgment.








 

SUE WALKER

JUSTICE

 

PANEL A:   CAYCE,
C.J.; GARDNER and WALKER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: March 23, 2006











[1]See Tex. R. App. P.
47.4.





[2]Palmer remained in the hospital for approximately five
days after the offense.  She passed away
before Rivera=s trial.  





[3]Detective East denied Rivera=s
allegation that he offered to refrain from charging Rivera with murder, if
Palmer died, in exchange for Rivera=s confession. 





[4]AIce@ is a
street name for methamphetamine hydrochloride. 
See National Institute on Drug Abuse, The Science of Drug Abuse
& Addiction, Methamphetamine,
http://www.nida.nih.gov/drugpages/methamphetamine.html (last visited March 21,
2006).