Alexander Rivera v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-056-CR

ALEXANDER RIVERA APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

A jury convicted Alexander Rivera of aggravated robbery and assessed his punishment at forty years’ confinement and a $5,000 fine.  
The trial court sentenced him accordingly.  In three points, Rivera complains that the trial court erred by denying his motion to suppress evidence and that the evidence is both legally and factually insufficient to support the jury’s verdict.  We will affirm.

II.  Factual and Procedural Background

On December 30, 2003, Ruth Palmer, an eighty-two-year-old woman, was loading groceries into her car in the parking lot of a Fiesta Food Mart.  As she climbed into the driver’s seat of her car, Rivera entered the back seat without her knowledge and sat directly behind her.  Rivera put his finger to the back of Palmer’s head to make her think he had a gun.  He instructed her to drive away and told her that he would hurt her if she made any sound.  About ten to twenty minutes later, Rivera left Palmer in a grocery store parking lot and drove away in her car.  Palmer then went to the hospital and complained of chest pain.  Physicians ultimately diagnosed her as having suffered a small heart attack.
(footnote: 2) 

Several hours after the offense, Rivera parked Palmer’s car near the residence of his friend, Kristi Jacobs.  Rivera remained at Jacobs’s residence until daybreak.  When he drove away in Palmer’s car, police officers who had been conducting surveillance on the car pursued him.  Rivera did not pull over and a high speed chase ensued.  Rivera jumped out of the car while it was still moving.  He fled, and an officer and police dog eventually caught him.  The police arrested Rivera and took him to a Fort Worth police station.  

At the station, Rivera asked Detective Jason East whether a particular detective with whom Rivera had had prior contact was working that day, and Detective East told Rivera that the detective was unavailable.  Detective East then read Rivera his rights, and Rivera also read and signed a form acknowledging his rights.  Rivera then confessed that he had entered Palmer’s vehicle in the Fiesta Food Mart parking lot, used his finger to make her think he had a gun, forced her to drive around, dropped her off, and then departed in her vehicle.  Rivera orally gave the statement to Detective East, and Detective East wrote it out in his handwriting.  Rivera initialed each paragraph and signed the bottom of each page.  Rivera then added in his own handwriting, “I did not want to hurt her at all!  And am very sorry for what happened.  I was on drugs and was not thinking right!”  He initialed that statement.    

Rivera filed a motion to suppress his statement, and the trial court carried the motion along with the trial.  After hearing the motion outside the presence of the jury, the court denied it.

III.  Motion to Suppress

During the suppression hearing, Rivera’s counsel asked Detective East whether it was possible that Rivera was under the influence of drugs when he confessed, and Detective East responded by stating, “Looks like he was drugged out . . . .”  Detective East testified that “[d]rugged out is a term[] that we use in law enforcement [to describe] someone who appears to have been staying up for long hours for an extended period of time who lives that life but [is] not necessarily on drugs at that time.”  
Rivera’s counsel asked Detective East whether it was possible that Rivera was not in his right mind when he confessed, and Detective East responded that it was possible.   

Rivera testified that he tried to tell Detective East that he had obtained Palmer’s car from a man named Juan Martinez but that Detective East was not interested in hearing anything further about Martinez because he did not believe Rivera.  Rivera further testified that he confessed because he “was afraid that [Detective East] was going to put . . . murder charges on [him] like he had told [him]” and because he was threatened.
(footnote: 3)  Rivera testified that he had smoked “ice”
(footnote: 4) with Jacobs from midnight until 6:00 a.m. on the day he confessed.  
In denying Rivera’s motion to suppress, the trial court concluded that 

if we are going to say what’s common knowledge, I’m of the opinion that methamphetamine is not necessarily mind-altering to the extent that other drugs are. . . . Taken in great quantity over a long period of time I understand it can cause psychosis.  That’s not what we have here.  We certainly don’t have a psychotic defendant.  We have a defendant who planned apparently, who was able to remember what was going on and [who] testified about his statement.  And I find that the statement was freely and voluntarily made without coercion or promises or hope of reward.  And that he understood the rights that he had and he waived them. . . . And the Court finds that [Rivera’s statements] are admissible in all respects as a matter of law. 

In his first point, Rivera complains that the trial court erred by denying his motion to suppress his confession because he was on methamphetamine at the time he confessed.  Rivera contends that the court incorrectly determined that methamphetamine was not a “mind-altering drug.”  The State responds that Rivera’s testimony does not indicate that he confessed because he was under the influence of methamphetamine and that Rivera was capable of making the choice to confess.

We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court’s decision, we do not engage in our own factual review.  
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.  
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
State v. Ballard
, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).  Therefore, we give almost total deference to the trial court’s rulings on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.  
Johnson v. State
, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); 
State v. Ballman
, 157 S.W.3d 65, 68 (Tex. App.—Fort Worth 2004, pet. ref’d).  But when the trial court’s rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court’s rulings on mixed questions of law and fact.  
Estrada v. State
, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); 
Johnson
, 68 S.W.3d at 652-53.

In determining whether a trial court’s decision is supported by the record, we generally consider only evidence adduced at the suppression hearing because the ruling was based on it rather than evidence introduced later.  
See Rachal v. State
, 917 S.W.2d 799, 809 (Tex. Crim. App.), 
cert. denied
, 519 U.S. 1043 (1996).  
But this general rule is inapplicable when the parties consensually relitigated the suppression issue during trial on the merits.  
Id
.  If the State raised the issue at trial either without objection or with subsequent participation in the inquiry by the defense, the defendant is deemed to have elected to re-open the evidence, and we may consider the relevant trial testimony in our review.  
Id
.

The statement of an accused may be used in evidence if it was freely and voluntarily made without compulsion or persuasion.  
Tex. Code Crim. Proc. Ann.
 art. 38.21 (Vernon 2005).  The determination of whether a confession is voluntary is based on an examination of the totality of the circumstances surrounding its acquisition.  
Reed v. State
, 59 S.W.3d 278, 281 (Tex. App.—Fort Worth 2001, pet. ref’d).  A confession is involuntary if circumstances show that the defendant’s will was “overborne” by police coercion.  
Creager v. State
, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997).  In other words, a statement is involuntary if the record reflects “official, coercive conduct of such a nature” that any statement obtained thereby is “unlikely to have been the product of an essentially free and unconstrained choice by its maker.”  
Alvarado v. State
, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995)
.  Intoxication alone does not render a confession involuntary.  
Jones v. State
, 944 S.W.2d 642, 651 (Tex. Crim. App. 1996), 
cert. denied
, 522 U.S. 832 (1997); 
Garcia v. State
, 919 S.W.2d 370, 387 (Tex. Crim. App. 1996) (op. on reh’g).  Additionally, lack of sleep or food alone will not render a confession involuntary.  
Chambers v. State
, 866 S.W.2d 9, 20 (Tex. Crim. App. 1993), 
cert. denied
, 511 U.S. 1100 (1994).

Here, Rivera testified at the suppression hearing that he had told Detective East that he had a methamphetamine habit, that he had been awake smoking “ice” for the preceding three or four days, and that he had smoked “ice” with Jacobs from 
midnight until 6:00 a.m. on the day he confessed.  He testified during the trial that he was high on methamphetamine when he confessed.  The fact that Rivera may have been under the influence of methamphetamine when he confessed does not automatically render the confession involuntary.  
See Jones, 
944 S.W.2d at 651; 
Garcia
, 919 S.W.2d at 387.

Instead, we must look at the totality of the circumstances surrounding Rivera’s confession to determine whether it was freely given.  
See Reed
, 59 S.W.3d at 281.  When Rivera arrived at the police station, he asked Detective East about another detective with whom he was familiar.  After Detective East read Rivera his rights, Rivera signed a sheet indicating that he understood his rights and proceeded to discuss the offense with Detective East.  Rivera gave a statement, and Detective East wrote it down.  Rivera read the statement, initialed each paragraph, and signed the bottom of each page.  Rivera then added a mitigating statement in his own handwriting explaining that he did not mean to hurt Palmer and that he was on drugs at the time of the offense.  We hold that the totality of the circumstances surrounding Rivera’s confession indicates that he was aware of his surroundings, that he understood his rights and the effect of his confession, and that he had the ability to think defensively and to offer a mitigating statement.  
See Reed
, 59 S.W.3d at 281.  
Thus, we hold that Rivera freely and voluntarily gave his confession and that the trial court did not abuse its discretion by denying Rivera’s motion to suppress the confession.  
See 
Tex. Code Crim. Proc. Ann.
 art. 38.21.
 Accordingly, we overrule Rivera’s first point.

IV.  Sufficiency of the Evidence

In his second and third points, Rivera contends that the evidence is legally and factually insufficient to support the jury’s verdict.  Specifically, Rivera contends that the State failed to prove beyond a reasonable doubt that Rivera threatened or placed Palmer in fear of imminent bodily injury or death because there are other reasons why Palmer was upset at the hospital.  
The State responds that there is sufficient evidence in the record to prove beyond a reasonable doubt that Rivera threatened or placed Palmer in fear of imminent bodily injury or death.
 

A.  Standards of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  The trier of fact is the sole judge of the weight and credibility of the evidence.  
See
 Tex. Code Crim. Proc. Ann.
 art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the evidence in favor of the verdict.  
Curry v. State
, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

The sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case.  
Malik v. State
, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); 
Ortiz v. State
, 993 S.W.2d 892, 895 (Tex. App.—Fort Worth 1999, no pet.).  Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State’s theories of liability, and adequately describes the particular offense for which the defendant was tried.  
Gollihar v. State
, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); 
Malik, 
953 S.W.2d at 240.  The law as authorized by the indictment means the statutory elements of the charged offense as modified by the charging instrument.  
See Curry
, 30 S.W.3d at 404.

The standard of review is the same for direct and circumstantial evidence cases.  
Burden v. State
, 55 S.W.3d 608, 613 (Tex. Crim. App. 2001);
 Kutzner v. State
, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999).

In contrast, in reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) when the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment and, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
. In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.  

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

B.  Evidence of Threat or Fear of Imminent Bodily Injury or Death

To convict Rivera of aggravated robbery, the State was required to prove that in the course of committing theft and with intent to obtain or maintain control of the vehicle, Rivera intentionally, knowingly, or recklessly caused bodily injury to Palmer or intentionally or knowingly threatened or placed Palmer in fear of imminent bodily injury or death.  
See 
Tex. Penal Code Ann. 
§ 29.02(a) (Vernon 2005).  A robbery becomes aggravated if a defendant commits a robbery as defined in section 29.02 and he “uses or exhibits a deadly weapon” or if a defendant “causes bodily injury to another person or threatens or places another person in fear of imminent bodily injury or death” and that person is sixty-five years of age or older.  
See id.
 § 29.03(a)(2), (3)(A).  The fear must be of such nature as in reason and common experience is likely to induce a person to part with his property against his will.  
Green v. State
, 567 S.W.2d 211, 213 (Tex. Crim. App. [Panel Op.] 1978). 

The indictment charged Rivera with “intentionally or knowingly, while in the course of committing theft . . ., threaten[ing] or plac[ing] Ruth Palmer, a person 65 years of age or older, in fear of imminent bodily injury or death.”  
At trial, the State primarily relied upon Rivera’s confession, Palmer’s medical records, and the testimony of Palmer’s sister to prove that Rivera
 threatened or placed Palmer in fear of imminent bodily injury or death.  
In Rivera’s confession, he stated, 

I observed an old white female (Ruth Palmer) getting into [her car]. As she got in the vehicle, I got in the rear seat when her back was turned. While I was sitting behind her, I put my finger to the back of her head to make her think I had a gun.  I told her to drive away and not make a sound or she would get hurt.  As we left the parking lot of Fiesta Food store, we drove by her house.  I told her to go there.  As we arrived at her house, she continued to drive down the street, Timberline.  I then made her drive around for awhile.  I kept her in the car for approximately 10-20 minutes until I found a place to let her out.  We drove for a while until I decided to let her go.  I told her to pull into the parking lot of Sack & Save so I could finally release her.  She did and I told her to get out. I then drove away in the car. 

Palmer’s sister, Ruby Harrell, testified that Palmer called her and said that she had been carjacked.  Harrell testified that Palmer sounded “very upset and anxious” and “excited.”  She also testified that Palmer did not “talk in her normal voice” during that telephone conversation. 

Palmer’s medical records indicate that medical professionals described her as “upset,” “tearful,” and “frightened.”  Additionally, Palmer’s medical records show that Palmer reported that she was

abducted at gunpoint and had her car stolen while at the grocery store.  She reports that a man allegedly came up to her with a gun in hand and abducted [her] for a period of approximately one half hour. She drove around with him.  She denies any trauma or any injury during the episode. Emotionally, however, she was extremely stressed.  She subsequently managed to effect her escape from the perpetrator and the police [were] called. 

Palmer’s medical records also show that she was 

robbed/held up . . . . [Palmer] had gun pulled on her and [gunman] made [her] drive with gunman in back seat.  [Palmer] upset on exam.  [Palmer] now [complains of] chest discomfort—“feels like someone sitting on [her] chest.”  [Palmer] was made to drive for 30 min.—tearful on exam. 

Harrell testified that after the offense, Palmer was “very anxious all the time” and that “she had trouble sleeping and had nightmares.”  Harrell also testified that after the offense, Palmer changed the locks on the doors to her house. 

Despite this evidence, the defense contends that Palmer could have been upset at the hospital because of her small heart attack or the stress of having a physical examination.  
At trial, Rivera argued that Palmer was upset at the hospital because she was in pain from the heart attack and because the heart attack reminded her of her mortality.  Dr. Brian McNamara testified that some small heart attacks are painful enough to make a person cry.  Dr. McNamara’s testimony also indicated that, at the time of the offense, Palmer had “significant heart problems,” including coronary artery disease, congestive heart failure, and “weakness of the pump function of the heart.” 

Viewing this evidence in a light most favorable to the verdict, we hold that a rational trier of fact could have found that Rivera 
intentionally or knowingly threatened or placed Palmer in fear of imminent bodily injury or death.  
See Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789; 
Hampton
, 165 S.W.3d at 693.  Furthermore, viewing all the evidence in a neutral light, favoring neither party, we hold that the jury was rationally justified in finding that Rivera intentionally or knowingly threatened or placed Palmer in fear of imminent bodily injury or death.  
See Zuniga
, 144 S.W.3d at 481
.  
Even if other possibilities exist as to why Palmer was upset at the hospital, those possibilities are not so strong that 
Rivera’s guilt cannot be proven beyond a reasonable doubt.  
See id. 
at 484-85.
  
Accordingly, we hold that the evidence was legally and factually sufficient to support the jury’s verdict.  
See Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789; 
Hampton
, 165 S.W.3d at 693; 
Zuniga
, 144 S.W.3d at 481
. 
 We overrule Rivera’s second and third points.

V.  Conclusion

Having overruled each of Rivera’s three points, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL A: CAYCE, C.J.; GARDNER and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: March 23, 2006

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
Palmer remained in the hospital for approximately five days after the offense.  She passed away before Rivera’s trial.  

3:
Detective East denied Rivera’s allegation that he offered to refrain from charging Rivera with murder, if Palmer died, in exchange for Rivera’s confession. 

4:
“Ice” is a street name for methamphetamine hydrochloride.  
See 
National Institute on Drug Abuse, The Science of Drug Abuse & Addiction, Methamphetamine, http://www.nida.nih.gov/drugpages/methamphetamine.html (last visited March 21, 2006).