COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-405-CR

 

TONY ANDREW TAYLOR                                                      APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 372ND DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I. 
Introduction

In three
points, Appellant Tony Andrew Taylor appeals his conviction for aggravated
robbery causing bodily injury to an elderly or disabled person.  We affirm.








II. 
Factual and Procedural Background

On March
21, 2008, sixty-eight-year-old Caroline Blevins went to Wal-Mart to purchase
Easter baskets for her grandchildren. 
After paying for her items, she placed her purchases, along with her
purse, into a shopping cart and pushed the cart to her vehicle in the parking
lot.  As she was loading the Easter
baskets into the trunk of her car, Blevins noticed that a red Blazer had
stopped near her cart.  She heard
somebody in the Blazer yell, AThere it
is,@ and
then saw a woman jump out of the Blazer and grab her purseCthe
woman was later identified as Luella Ingram. 
A tug-of-war ensued, Ingram jerked the purse out of Blevins=s hands,
causing pain in Blevins=s shoulder and neck.  Blevins then heard someone from the front
seat of the Blazer yell, ALet=s go!@  Ingram jumped into the back of the Blazer,
and the Blazer took off.

Blevins
finished loading her purchases into her vehicle, wrote down part of the Blazer=s license
plate number, and drove off after the Blazer. 
She located the Blazer stopped under a bridge not too far from
Wal-Mart.  Blevins parked her car in
front of the Blazer so that it would not be able to go anywhere, then got out
of her car and approached the Blazer. 
Blevins opened the back door to confront Ingram.  Ingram told her,AGet out
of here,@ and
then started to hit Blevins.  Blevins
located her purse underneath a coat on the floorboard.








Taylor,
the Blazer=s owner and driver, got out of
the car and said, AWhat=s
happening?@ and AI don=t know
anything about it.@ 
After retrieving her purse, Blevins returned to her vehicle, wrote down
the Blazer=s complete license plate number,
and discovered that the cash she had had in her purse was missing.  Blevins then drove back to Wal-Mart and
reported the robbery to the off-duty police officer working security.

On April
30, 2008, the State indicted Taylor for the offense of aggravated robbery.  The indictment stated,

[Taylor did] then and there
intentionally or knowingly, while in the course of committing theft of property
and with intent to obtain or maintain control of said property, cause bodily
injury to Caroline Blevins, a person 65 years of age or older or a disabled
person, by jerking her arm with Defendant=s hand.

During
trial, in addition to Blevins=s
testimony, the State introduced a surveillance video of the parking lot at the
time of the robbery and an audio recording of an interview that occurred
between Taylor and Detective Jeremy Rhoden. 
On the surveillance video, Taylor=s red
Blazer is seen stopping near Blevins=s
vehicle.  The video shows a person
jumping out of the Blazer and an altercation taking place between that person
and Blevins.  The person is then seen getting
back into the Blazer, and the Blazer is seen leaving the parking lot.  The time code on the video shows that the
whole incident took less than twenty seconds.








In the
audio recording, Taylor began the interview by telling Detective Rhoden that he
owned the red Blazer and that it had been stopped under the bridge because it
had run out of gas.  He went on to state
that he had not been in the Wal-Mart parking lot and that Ingram had not been
in his vehicle.  When told about the
parking lot surveillance video, Taylor recanted his statements and admitted
that he had been in the Wal-Mart parking lot and that Ingram had also been in
the vehicle with him.  He went on to
state that he had not known that Ingram was going to grab Blevins=s purse
and that, when she had grabbed the purse, he had told her to give it back.  When asked by the detective why he had driven
off and not waited for Ingram to return the purse, Taylor replied, AI
panicked.@

After a
trial on the merits, Taylor made the following motion outside the presence of
the jury:

Comes now Defendant, Tony Andrew Taylor, and makes its motion for
instructed verdict of not guilty, shows as follows:  Proof at the trial shows variance with the
indictment in that there is no evidence that Tony Taylor jerked Ms. Blevins=s arms with Defendant=s hand.  We would ask the Court to instruct the jury
to find the Defendant not guilty.

 

The trial court denied Taylor=s motion
Abased
upon the law of parties.@








A charge
conference took place following the denial of Taylor=s
motion.  During the conference, the trial
court agreed that the jury charge should not allow for conviction as a
principal Asince there really isn=t any
evidence that he did the jerking@ but
instead should allow for conviction as a party. 
Taylor objected to the charge being submitted under the law of parties
on the ground that he had not been charged as a party in the indictment.  The next day, the trial court provided a new
charge to which Taylor made the following objection:

Comes now Defendant, Tony Andrew Taylor, makes this additional
objection to the Court=s Charge.  Defendant objects to page three, the
application paragraph which authorizes a conviction of Mr. Taylor for
committing the offense by jerking her, Caroline Blevins=s, arm with Luella Ingram=s hand and thatCespecially the part that
says ALuella Ingram.@

 

It=s Defendant=s position that that
should be Defendant=s hand as the application
allows the jury to convict on a theory not alleged in the indictment.

 

The
trial court overruled Taylor=s
objection on the basis that case law Aallows
parties theory to be charged and, more specifically, requires it to be charged
and applied to the facts of the case.@  After deliberations, the jury found Taylor
guilty of the offense of aggravated robbery causing bodily injury to an elderly
or disabled person, and the trial court sentenced him to  thirty-five years=
confinement.  This appeal followed.








III.  Legal
Sufficiency

In his
first and second points, Taylor asserts that the evidence is legally
insufficient to support a finding of guilt under both the federal and state due
process standards.

A.  Standards of Review

We
review a federal due process challenge to the legal sufficiency of the evidence
by determining whether a rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781 (1979); Clayton v. State, 235 S.W.3d 772, 778 (Tex.
Crim. App. 2007).  In our review, we
measure the evidentiary sufficiency against the Asubstantive
elements of the offense as defined by state law.@  Fuller v. State, 73 S.W.3d 250, 252
(Tex. Crim. App. 2002) (quoting Jackson, 443 U.S. at 324 n.16; 99 S. Ct.
at 2792).  However, when legal
sufficiency is challenged under state law, we measure the evidentiary
sufficiency against Athe elements of the offense as
defined by the hypothetically correct jury charge for the case.@  Grotti v. State, 273 S.W.3d 273, 280 (Tex.
Crim. App. 2008); Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App.
1997); see Gollihar v. State, 46 S.W.3d 243, 245 (Tex. Crim. App. 2001).








B.  State Due Process

In his
second point, Taylor asserts that the evidence is legally insufficient to
support a finding of guilty under state law. 
Specifically, Taylor argues that there is a material variance between
the indictment, which states ADefendant=s hand,@ and the
jury charge, which states ALuella
Ingram=s hand,@ and
that if the trial court had given a hypothetically correct charge, as
authorized by the indictment, then the evidence was insufficient to convict
him.

1.  Variance

A
variance occurs when there is a discrepancy between the allegations in the
charging instrument and the proof at trial. 
Gollihar, 46 S.W.3d at 246. 
In a variance situation, the State proves the defendant guilty of a
crime but proves the crime=s
commission in a manner that differs from the allegations in the charging
instrument.  Id.  Not all variances are fatal; a variance
between the wording of an indictment and the evidence presented at trial is
fatal only if it is material and prejudices the defendant=s
substantial rights.  Id. at 257; see
also Fuller, 73 S.W.3d at 253.








In
reviewing the materiality of such a variance, we must determine whether the
variance deprived the defendant of notice of the charges and whether the
variance subjects the defendant to the risk of being prosecuted later for the
same crime.  Fuller, 73 S.W.3d at
253; Gollihar, 46 S.W.3d at 257. 
Allegations giving rise to immaterial variances may be disregarded in
the hypothetically correct charge, but allegations giving rise to material
variances must be included.  Gollihar,
46 S.W.3d at 257.

Here,
the variance occurs between the wording of the indictment, which charges Taylor
as a principal, and the wording of the jury charge, which charges him as a
party.  Under Texas law, however, a party
to an offense may be charged with the offense without alleging the facts that
make the defendant a party to the offense and criminally responsible for the
conduct of another.  Crank v. State,
761 S.W.2d 328, 351 (Tex. Crim. App. 1988), cert. denied, 493 U.S. 874,
110 S. Ct. 209 (1989), overruled on other grounds by Alford v. State,
866 S.W.2d 619, 624 n.8 (Tex. Crim. App. 1993); Pitts v. State, 569
S.W.2d 898, 900 (Tex. Crim. App. 1978). 
The penal code eliminates the old distinctions between principals and
accomplices and the attendant complexities in drafting indictments.  Pitts, 569 S.W.2d at 900; see
Tex. Penal Code Ann. ' 7.01(c) (Vernon 2003).  Taylor, is charged with constructive
knowledge of the law.  See Crain v.
State, 69 Tex. Crim. 55, 57, 153 S.W. 155, 155B56
(1913); Tex. Penal Code Ann. '' 1.02,
8.03(a) (Vernon 2003); see also Wilson v. State, 825 S.W.2d 155, 159
(Tex. App.CDallas 1992, pet. ref=d)
(constructive knowledge of criminal law extends to procedural laws and case
law).








Therefore,
because the law allows Taylor to be charged with an offense without alleging
that Taylor was criminally responsible for the conduct of another, Taylor was
on notice that the offense charged in the indictment could involve culpability
as a primary actor or as one criminally responsible for the conduct of another.  See Pitts, 569 S.W.2d at 900; see
also Reid v. State, No. 05‑90‑01049‑CR, 1991 WL 218766,
at *2 (Tex. App.CDallas Oct. 25, 1991, no pet.)
(not designated for publication). 
Accordingly, the indictment provided sufficient notice to Taylor to allow
him to prepare for his defense. 
Furthermore, since the entire record is reviewed in the case of a claim
of double jeopardy, there is no risk that Taylor will be prosecuted for the
same offense at a later time.  See
U.S. v. Apodaca, 843 F.2d 421, 430 n.3 (10th Cir.) (noting that entire
record, not just indictment, may be considered in determining whether double
jeopardy precludes subsequent prosecution), cert. denied, 488 U.S. 932
(1988).  Thus, we conclude that the
variance is immaterial and may be disregarded in the hypothetically correct
jury charge.  See Gollihar, 46
S.W.3d at 257.

2.  Hypothetically Correct Jury Charge








To
determine whether the evidence is legally sufficient to uphold Taylor=s conviction,
we measure the sufficiency of the evidence by the elements of the offense as
defined by the hypothetically correct jury charge for the case.  Malik, 953 S.W.2d at 240; Ortiz v.
State, 993 S.W.2d 892, 895 (Tex. App.CFort
Worth 1999, no pet.).  Such a charge
would be one that accurately sets out the law, is authorized by the indictment,
does not unnecessarily restrict the State=s
theories of liability, and adequately describes the particular offense for
which the defendant was tried.  Gollihar,
46 S.W.3d at 253; Malik, 953 S.W.2d at 240.  The law as authorized by the indictment means
the statutory elements of the charged offense as modified by the charging
instrument.  See Curry v. State,
30 S.W.3d 394, 404 (Tex. Crim. App. 2000).








The
indictment in this case alleged that Taylor committed the offense of aggravated
robbery by intentionally or knowingly causing bodily injury to Blevins, a person
sixty-five years of age or older, while in the course of committing theft.  Having alleged bodily injury to a person
sixty-five years of age or older, the State had to prove bodily injury to a
person sixty-five years of age or older.  See Rivera v. State, No. 02‑05‑00056‑CR,
2006 WL 743030, at *5 (Tex. App.CFort
Worth Mar. 23, 2006, pet. ref=d) (mem.
op., not designated for publication).  To
conform to the indictment, therefore, a hypothetically correct charge would
require the State to prove, beyond a reasonable doubt, either that Taylor
intentionally or knowingly caused bodily injury to Blevins in the course of
committing theft, or because the State relied on section 7.02(a)(2) of
the penal code, that Taylor was criminally responsible as a party to another
person intentionally or knowingly causing bodily injury to Blevins while in the
course of committing a theft.  That is,
by acting with intent to promote or assist the commission of the offense,
Taylor solicited, encouraged, directed, aided, or attempted to aid the other
person to commit the offense.  See
Tex. Penal Code Ann. '' 7.01(a)(2), 7.02(a)(2) (Vernon
2003); Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005).

a.  Ingram as the Primary Actor

To prove
the offense of aggravated robbery, the State had to prove that a person, in the
course of committing theft and with intent to obtain or maintain control of the
property, intentionally or knowingly caused bodily injury to another person
sixty-five years of age or older.  Tex.
Penal Code Ann. '' 29.02B.03
(Vernon 2003).  The jury charge included
the following definitions:  (1) Aintentionally@Ca person
Aacts
intentionally, or with intent, with respect to a result of his conduct when it
is his conscious objective or desire to cause the result[,]@ (2) Aknowingly@Ca person
Aacts
knowingly, or with knowledge, with respect to the result of his conduct when he
is aware that his conduct is reasonably certain to cause the result[,]@ and (3)
Abodily
injury@Cis Aphysical
pain, illness, or any impairment of physical condition.@








Here,
the record reflects that Ingram grabbed Blevins=s purse,
engaged in a tug-of-war with Blevins over the purse, jerked the purse out of
Blevins=s hands,
and caused pain to Blevins=s
shoulder and neck and that Blevins was sixty-eight years old at the time of the
incident.  Based on the evidence in the
record, and in accordance with the legal sufficiency standard of review, we
hold that a rational jury could find, beyond a reasonable doubt, that Ingram
intentionally or knowingly caused bodily injury to Blevins, a person sixty-five
years or older, while trying to obtain or maintain control of Blevins=s
purse.  Therefore, the evidence is
legally sufficient to establish that Ingram, as primary actor, committed
aggravated robbery as alleged in the indictment.

b.  Taylor as Party to Aggravated Robbery








Having
concluded that Ingram was the primary actor in the aggravated robbery against
Blevins, we next assess the legal sufficiency of the evidence to establish that
Taylor was a party to the aggravated robbery. 
To establish liability as a party, it must be shown that the accused
harbored the specific intent to promote or assist the commission of the
offense, i.e., aggravated robbery.  Christensen
v. State, 240 S.W.3d 25, 31 (Tex. App.CHouston
[1st Dist.] 2007, pet. ref=d); Pesina
v. State, 949 S.W.2d 374, 382 (Tex. App.CSan
Antonio 1997, no pet.).  The evidence
must show that the parties were acting together to accomplish their common
purpose.  Wygal v. State, 555
S.W.2d 465, 469 (Tex. Crim. App. 1977). 
The agreement to accomplish a common purpose, if any, must be made
before or contemporaneous with the criminal event, but in determining whether
one has participated in an offense, the court may examine events, before,
during, and after the commission of the offense.  Powell v. State, 194 S.W.3d
503, 507 (Tex. Crim. App. 2006); Miller v. State, 83 S.W.3d 308, 314
(Tex. App.CAustin 2002, pet. ref=d).

While an
agreement of the parties to act together in common design can seldom be proved
by direct evidence, reliance may be had on the actions of the parties showing
by direct or circumstantial evidence an understanding and common design to do a
certain act.  Burdine v. State,
719 S.W.2d 309, 315 (Tex. Crim. App. 1986); Pesina, 949 S.W.2d at
383.  In fact, circumstantial evidence
may be sufficient alone to establish one as a party to an offense. Powell,
194 S.W.3d at 506; Wygal, 555 S.W.2d at 469.  The State must show more than mere presence
to establish participation in a criminal offense.  Valdez v. State, 623 S.W.2d 317, 321
(Tex. Crim. App. 1981) (op. on reh=g); Pesina,
949 S.W.2d at 383.  Evidence is
sufficient, however, to convict under the law of parties where the accused is
physically present at the commission of the offense and encourages its
commission by words or other agreement.  Ransom
v. State, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994).








Here,
the evidence showed that Taylor drove Ingram to the scene of the aggravated
robbery.  Blevins heard someone in the
Blazer yell, AThere it is,@ right
before Ingram jumped out of the Blazer and grabbed Blevins=s
purse.  Blevins then heard someone in the
Blazer yell, ALet=s go!@  Ingram jumped back into the Blazer with
Blevins=s purse,
and Taylor drove directly out of the parking lot.  The whole incident took less than twenty
seconds.

A
rational trier of fact could have found, from the sum total of this
circumstantial evidence, that Taylor acted with intent to promote or assist
Ingram in the commission of the offense of aggravated robbery by aiding or
attempting to aid Ingram in committing that offense.  See Escobar v. State, 28 S.W.3d 767,
774 (Tex. App.CCorpus Christi 2000, pet. ref=d); Johnson
v. State, 6 S.W.3d 709, 711 (Tex. App.CHouston
[1st Dist.] 1999, pet. ref=d); Brewer
v. State, 852 S.W.2d 643, 647 (Tex. App.CDallas
1993, pet. ref=d); Webber v. State, 757
S.W.2d 51, 53B55 (Tex. App.CHouston
[14th Dist.] 1988, pet. ref=d).  Therefore, we hold that the evidence is
legally sufficient to establish that Taylor knowingly and intentionally aided
and assisted Ingram to commit aggravated robbery against Blevins, as charged in
the indictment.  Accordingly, we overrule
Taylor=s second
point.

C.  Federal Due Process








In his
first point, Taylor asserts that the evidence is legally insufficient to
support a finding of guilty under federal law. 
Specifically, Taylor argues that (1) because the indictment charged him
as a principal, he could not be convicted as a party and (2) the evidence was
insufficient to support his being convicted of the Ameans
charged@Cthat is,
as a principal.

In
support of his first argument, Taylor directs our attention to Jackson v.
Virginia, in which the U.S. Supreme Court stated, AIt is
axiomatic that a conviction upon a charge not made or upon a charge not tried
constitutes a denial of due process.@  443 U.S. at 314, 99 S. Ct. at 2786.  Taylor claims that because he was charged as
a principal, his conviction under the law of parties denied him due
process.  However, federal courts have
consistently held that Aone who has been indicted as a
principal may, on proper instructions, be convicted on evidence showing only
that he aided and abetted the commission of the offense.@  U.S. v. Robles‑Pantoja, 887 F.2d
1250, 1255 (5th Cir. 1989); U.S. v. Gordon, 812 F.2d 965, 969 (5th
Cir.), cert. denied, 483 U.S. 1009 (1987); U.S. v. Oquendo, 505
F.2d 1307, 1310 n.1 (5th Cir. 1975). 
Here, the trial court properly instructed the jury on the law of
parties.  See Brown v. Collins,
937 F.2d 175, 182 (5th Cir. 1991) (holding that evidence was sufficient to
prove substantive elements of aggravated robbery under law of parties as
charged generally in court=s
instructions even though evidence did not conform strictly to theory of
culpability as alleged in indictment and charged in application paragraphs of
court=s
instructions).  Therefore, Taylor=s first
argument is without merit.








As to
Taylor=s second
argument, because the jury charge under the law of parties does not violate his
rights to due process and because we have already concluded that the evidence
is legally sufficient to support his conviction under the law of parties, we
need not also address whether the evidence was legally sufficient to support
his being convicted as a principal.  See
Tex. R. App. P. 47.1.  Accordingly, we
overrule Taylor=s first point.

IV.  Insufficient
Notice

In his
third and final point, Taylor asserts that the indictment provided Ainsufficient
notice of the charges against him.@  Specifically, Taylor complains that because
the indictment charged him as a principal, he did not have notice that he would
be charged as a party.  However, we have
already addressed this issue in our variance discussion and concluded that the
indictment provided sufficient notice to Taylor.  Therefore, we overrule Taylor=s third
point.

V. 
Conclusion

Having
overruled all of Taylor=s points, we affirm the trial
court=s
judgment.

BOB MCCOY

JUSTICE

PANEL:  LIVINGSTON, DAUPHINOT, and MCCOY, JJ. 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  November 5, 2009











[1]See Tex. R. App. P. 47.4.